GULLY, STATE TAX COLLECTOR, *v.* C. I. T. CORPORATION.

(Division A.  Oct. 23, 1933.  Suggestion of Error Overruled Nov. 20, 1933.)

[150 So. 367.  No. 30644.]

Mize, Thompson & Mize, of Gulfport, for appellant.

S. B. Ecker, of New York City, and Graham & Graham, of Gulfport, for appellee.

272

Argued orally by **S. C. Mize**, and **R. H. Thompson, Jr.**, for appellant, and by **D. M. Graham**, for appellee.

**Cook, J.**, delivered the opinion of the court.

This is an appeal by J. B. Gully, state tax collector, from adverse judgments of the circuit court of Harrison

county in three cases which involved essentially the same facts, and were consolidated by agreement of the parties. One of the cases was an appeal by the appellee, C. I. T. Corporation, from a back tax assessment by the municipal authorities of the city of Gulfport, Mississippi, of solvent 'credits of said corporation, evidencing money loaned at a greater rate of interest than six per cent. per annum for the years 1929, 1930, and 1931. Another of the cases was an appeal from a like assessment of the same solvent credits made by the board of supervisors of Harrison county, while by the third suit it was sought to collect from the said C. I. T. Corporation privilege taxes and damages for the period from June 1, 1930, to June 1, 1932, amounting to one thousand two hundred dollars.

The facts necessary to be stated are substantially as follows: The C. I. T. Corporation is a foreign corporation, with offices in New York, Chicago, and various other cities throughout the business world, which was qualified and admitted to do business in the state of Mississippi. It is engaged in two classes of business which are separate and distinct in the plan used; one called the direct plan, and the other the indirect plan. Under what is denominated the direct plan, they are engaged in the purchase of notes and conditional sale contracts securing the purchase price of automobiles. In the transaction of this class of business the said corporation purchases outright notes and contracts evidencing and securing the purchase price of automobiles, and collects the same directly from the purchaser; and for this purpose only it maintains an office in Jackson, Mississippi, and pays a privilege tax for so doing business in said city and the county of Hinds. Under the indirect plan, this corporation was engaged in lending money secured by assigned conditional sale contracts of personal property, principally furniture; the borrower being at all times required to place and keep with the lending corporation collateral amounting to at least one and one-half times the amount of the outstanding loan.

In February, 1928, the Gulfport Furniture Company, of Gulfport, Mississippi, received a circular letter, sent from the New York office of the appellee corporation, outlining its plan of lending money on furniture contracts, and, after the exchange of correspondence, and the furnishing of a financial statement by the Gulfport Furniture Company, the appellee, at the request of the furniture company, sent a traveling auditor to Gulfport to examine into the financial condition of the Gulfport Furniture Company, and the class of paper acquired by it in selling its furniture to installment buyers. Upon the report and approval of its auditor, a loan of forty-three thousand five hundred dollars was consummated upon approval by the appellee's New York office, and a check for the proceeds of the loan was drawn by the appellee corporation on a New York bank and forwarded to the Gulfport Furniture Company. The note which was executed for this loan was payable at the office of appellee in New York, and was kept there, together with attached sheets listing and describing the collateral securing the note, and the collateral itself, consisting of conditional sales contracts executed by purchasers' of furniture from the Gulfport Furniture Company. From time to time payments were made on the original loans, and other similar loans were made; and some of the notes evidencing these loans contained the following provision: "So long as the holder permits, we will as agents for the holder collect the sums due on said collateral in trust for the holder and agree not to mingle the same with our funds and to remit to the holder on the installment dates set out in the note the portion thereof equal to the respective installments or such further portion as the holder may demand plus all anticipated collections on collateral, and such remittances shall be credited toward the payment of the respective installments. Repossessed merchandise shall be set aside in trust for the holder."

Until about January, 1932, the Gulfport Furniture

Company acted as collecting agent for the appellee, and collected the assigned collateral, and made monthly remittances of its collections for credits on its loans from appellee. But the testimony is undisputed that the above-quoted provision of the notes, that these collections should be made in trust for the holder and should not be mingled with the funds of the Gulfport Furniture Company, was not enforced, but was wholly disregarded. From time to time the appellee sent its auditors to Gulfport to check the collections and remittances, which were made monthly.

About January, 1932, the Gulfport Furniture Company became financially embarrassed, and was adjudicated a bankrupt. Thereupon, the appellee opened an office in Gulfport in charge of a representative, for the sole purpose of collecting the outstanding furniture installment contracts held by it, for application upon and discharge of the balance due on loans previously made by it to the bankrupt furniture company. Included in the solvent credits attempted to be assessed was also a small loan made to the Norwood Furniture Company, of Biloxi, Mississippi, which was handled in substantially the same manner as the Gulfport transaction. The testimony is to the effect that all collections made on collateral securing these loans were promptly remitted to the New York or Chicago offices of appellee, and were not reinvested in this state.

The first question presented is whether or not the loans made to the Gulfport Furniture Company and the notes evidencing the same had such a business situs in Harrison county, Mississippi, as to subject them to taxation. In opening their discussion of this question, counsel for appellant state that the court below based its decision on the case of City of Vicksburg v. Armour Packing Company (Miss.), 24 So. 224; and they frankly conceded that if that case has not been overruled, and is to be followed, the case at bar should be affirmed. This statement, that

the judgment of the court below must be affirmed if the case of City of Vicksburg v. Armour Packing Company, supra, is followed, is undoubtedly correct so far as the attempted assessment of solvent credits is concerned. We do not understand counsel to contend that the case of City of Vicksburg v. Armour Packing Company has been expressly overruled, but their contention seems to be that changes in the statute giving the state the right to assess solvent credits for taxes, together with the trend of later decisions construing and applying the statute, have rendered that decision inapplicable.

Section 3757, Code 1892, was the statute providing for the taxation of solvent credits at the time the case of City of Vicksburg v. Armour Packing Company, supra, was decided, while sections 3137 and 3108(v), Code 1930, are the present statutes providing for the assessment of such credits, including money loaned at a greater rate of interest than six per cent. per annum. A critical reading and comparison of these statutes show that the wording of section 3757 has been somewhat changed by later enactments, but it leads us to the conclusion that there has been no material change in the legal effect thereof, and we do not think the force and binding effect of the opinion in the case of City of Vicksburg v. Armour Packing Company, supra, can be avoided on the ground of a change in the controlling statute.

In the case of City of Vicksburg v. Armour Packing Company, supra, that company was a foreign corporation, having a place of business in Vicksburg, Mississippi, with a manager there, to whom it shipped meats to be sold, and, when such meats were sold for cash, or on thirty days' time as cash, according to the custom of merchants in said city, its manager remitted daily to it, at Kansas City, the money collected, and at the time of the attempted assessment it had notes and accounts due for meats sold, and in holding that these notes were not taxable, the court said: "The general rule as to the situs of invisible and

intangible personal property—as notes, bonds, etc.—is that it follows the domicile of the owner, and it is held to be taxable at such domicile. But it is an exception to the general rule that, where such credits acquire a business situs different from that of the domicile of the owner, then they may be taxed at such business situs. The question as to what constitutes a business situs is, to us, a difficult one; but, as we gather the meaning of the cases on the subject in our reports, we take a business situs to be connected with the idea of more or less of permanency of location of such credits, or with a purpose to incorporate them when collected into the mass of property of the state. Upon the facts of this case, there is not, as we think, enough of the quality of permanency of location of the credits of appellee to give them a business situs at Vicksburg, so as to render them taxable in this state."

We have found no later case, and counsel has not directed our attention to any that, in our opinion, so modifies the above announcement of the court as to render it inapplicable to the facts here involved; and applying the principle there announced to the facts in the case at bar, we think the court below correctly held that the solvent credits sought to be taxed did not have such business situs in Harrison county as to render them taxable.

Upon that phase of the case which includes the liability of the appellee for privilege taxes, the question for decision is whether or not, under the facts, it was engaged in this state in the business of lending money within the meaning of section 129, chapter 88, Laws 1930. This section provides that:

"Each person engaged in this state in the business of making loans of money on personal or other securities, of selling and negotiating written evidences of debt for the payment of money either fixed or uncertain, and receiving payments thereof in installments or otherwise and commonly known as 'Industrial Loan Company,' 'In-

dustrial Bank,' 'Morgan Plan Company,' and 'Morris Plan Company,' or similar designations other than national or state banks and building and loan associations, shall be deemed to be operating an industrial loan business within the provisions of this act.

"Upon each person operating an industrial loan business as defined herein, the following tax: . . . In municipalities of classes two and three......$300.00. . . ."

In the case of State v. Smith, 68 Miss. 79, 8 So. 294, it was held that "A loan to a person in the state by a non-resident, who has no place of business, location or agent in this state, but accomplishes the loan elsewhere, is not taxable here, notwithstanding negotiations for the loan were made by persons in this state, and it is secured by a mortgage on property within this state."

Section 129, chapter 88, Laws 1930, imposes the tax on "each person engaged in this state in the business of making loans of money," etc. In the case at bar, the appellee had no place of business in this state, and no agent in this state for the purpose of loaning money. It is true that the Gulfport Furniture Company acted for a period as appellee's agent for the collection of collateral securing the outstanding loans, but these loans were consummated wholly outside of the state after negotiations carried on between the borrower in this state and agents of appellee outside of the state. After the insolvency of the Gulfport Furniture Company, the appellee established an office in Harrison county, in charge of an agent, for the sole purpose of protecting the balance of its outstanding loans and collecting the collateral notes held by it as security for the payment of this balance. The act of this agent in collecting collateral to retire outstanding loans, which had been previously consummated outside of the state, did not constitute the doing of a money lending business in this state. Harleston v. West Louisiana Bank, 129 Miss. 111, 91 So. 423. Neither the Gulfport Furniture

Company nor the agent sent to Gulfport for the purpose of collecting the balance due on outstanding loans previously consummated had any authority in connection with the making of loans in this state, and their acts in collecting collateral for application on outstanding loans did not constitute the doing of a money lending business in this state.

The judgment of the court below will therefore be affirmed.

Affirmed.