FORTENBERRY *et al. v.* STATE.

(In Banc.   April 14, 1941.)

[1 So. (2d) 585.   No. 34451.]

G. Q. Whitfield, of Jackson, for appellants.

A. M. Byrd, Assistant Attorney-General, for appellee.

Argued orally by **G. Q. Whitfield**, for appellants, and by **A. M. Byrd**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

A sufficient statement of the facts, composed by taking the testimony of the prosecuting witness as true and sup-

plementing it with those portions of the testimony in behalf of the defendants which are undisputed, is as follows:

A young negro named John T. Alexander was whipped by some white men on the morning of July 3, 1940. The report of this occurrence reached his mother and other relatives who lived in McComb, about twelve miles distant. A party of five or six negroes who were relatives of the boy, or close friends, departed that afternoon in two automobiles from McComb to go in search of the whipped boy and to bring him at once to McComb. Of these the two defendants in the present case were armed with pistols. They went first to the home of Frank Morris, an uncle of the boy, with whom he lived, but not finding him there, they went to another place in the search but still not finding him they returned to the Frank Morris house, and upon their arrival the boy was there.

Frank Morris was a tenant of Gatlin, a white man. About ten minutes after the negroes had found the boy at Frank Morris' house, which was shortly before sundown, Gatlin was walking along the road about 150 yards from the Morris house, and he heard some profanity, loud enough to be heard also by the women of the neighborhood. Gatlin knew of the whipping, although he had taken no part therein. When he heard the cursing he decided to go to the Morris house for the purpose, as he says, of making the parties get off his place. As he approached, he had one hand in his pocket and when about thirty or forty feet from the porch, he noticed that everything had become quiet, whereupon he called out to know "where them damn bad negroes were." Two of them, the defendants here, answered and one came from behind one of the automobiles, and the other from a hedge, with pistols presented, and warned Gatlin to approach no farther. Gatlin still had his hand in his pocket and one of the defendants grasped his arm, forced his hand from his pocket, and when they saw that he had a large closed knife in his hand, one of them snatched it from him. One

or both of them then, or about the same time, hit Gatlin over the head with a pistol or pistols, and while he was prostrate in a dazed condition, one or the other quickly searched through his pockets, but finding no other arms upon Gatlin, all the negroes forthwith took to their cars, carrying the whipped boy with them, and proceeded at once to McComb. Gatlin in a little while made his way to a country store about 250 yards distant, and after being there for a time, not precisely disclosed by the record, he found that two dollars which he had had in his pockets was missing.

The defendants were indicted, charged with robbery with deadly weapons; were convicted and sentenced to death, hence this appeal.

Following upon the descent of the nation-wide financial depression, one of the effects of which was a marked increase in the crimes of larceny, robbery, and burglary, and with the advent of the automobile everywhere and the construction of improved highways, one of the criminal developments which had thrust itself, perhaps above all others, upon public attention in this State, as well as elsewhere, was the robbery of banks, mercantile establishments, filling stations and the like, by those who had taken to banditry as a business, or who for the time being had copied the crucial characteristics of that course, and suddenly appearing and thereafter hastily escaping, would use deadly weapons in enforcing their purpose and who were so intently predetermined upon the accomplishment of that purpose that they would kill in its execution and would kill also in making their escape.

This was the situation when the Legislature convened in 1932, and it was to meet this aggravated development then becoming frequent rather than of occasional occurrence that Chapter 328, Laws 1932 was enacted. See Hall v. State, 166 Miss. 331, 148 So. 793. The new statute is as follows:

"An Act to make robbery a capital offense under cer-

tain conditions and to fix the penalty upon conviction for a violation of this act.

"Section 1. Be it enacted by the Legislature of the State of Mississippi, That every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be punished by death if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at death, the court shall fix the penalty at imprisonment in the penitentiary for any term not less than three years.

"Sec. 2. The passage of this Act shall not be held to repeal any existing criminal statute of the State."

The old statute, not repealed, which had been in existence for a hundred years, and which in fact is a statutory definition of the common-law offense, is as follows: "Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery." Section 1126, Code 1930.

The question here for determination is whether the facts, as stated, bring the case now before us within the purview of the new statute.

In considering the meaning and effect of a new and supplemental enactment, which by an express provision disclaims the purpose to repeal any existing law, there is, more than in the ordinary case, the duty of the court to take into consideration all the facts and circumstances leading up to the new enactment, the developments in the history of the times and the particular characteristics of the specific evil which the new and supplemental statute was designed to curb, and to apply the new statute to that particular evil with its classifying characteristics,

leaving the old statute to cover such cases as do not definitely and distinctly belong to the particular evil and the particular characteristics of that evil at which the new statute is directed. Compare Hall v. State, supra, and Choctaw County v. Tennison, 161 Miss. 66, 74, 134 So. 900.

In the first place the awkwardness of the language of the new statute is such that it must have aid by construction to the effect that the taking or attempting to take by violence as denounced in that part of Section 1 next preceding the disjunctive "or," shall be by the use of a deadly weapon, else as to that part the old statute and the new would prescribe different penalties for precisely the same unlawful act. But that construction having been attached, it is not enough that the statute shall then be left as being satisfied if only the means used in the violence shall be by a deadly weapon or that the putting in fear shall be by the exhibition of a deadly weapon.

We must in accordance with the stated principles of construction go further and take light from the particular evils and the classifying characteristics thereof which through the experiences of the times had brought about the enactment of the new and supplemental statute, and in that light the pathway to the proper construction becomes plain, and thereby we must see that it was not only the particular means at which the new statute was directed, but also, as an essential element, the particular intent which attended the use of the means, the real end towards which the means is applied as a method of compulsion, and that the particular intent must be one in which lucre or substantial gain in money or property was the dominant or primary purpose, and which is not to be supplied by that which happens as a mere incident to, or as a collateral development in, some other main and primary motive; and that, moreover, the accused must be the aggressor both as to means and the stated intent. Compare Anderson v. State, 168 Miss. 424, 151 So. 558.

The case Odom v. State, 172 Miss. 687, 161 So. 141, furnishes a ready example of the distinction which we draw as regards the new statute. There Odom was armed with a deadly weapon, and was an aggressor, and a pistol was taken from the victim. The dominant and primary purpose of the accused, however, was not robbery, but was to commit upon the victim an assault and battery. The court held the accused to be guilty of robbery because the taking of the pistol from the victim was the natural and probable outgrowth from the unlawful aggression of the accused in pursuit of the main design to commit the assault and battery. But suppose Odom had been indicted under the new statute and sentenced to death. Would the court have upheld any such a sentence as being within the scope and purpose of the new statute? We must reply in the negative, and upon the ground that the legislature could not have had in mind the allowance of any such extreme penalty for any such a case. It was for such a case and those not within the special classification hereinabove pointed out that the old statute was left unrepealed.

If laws must be respected in the sense of requiring obedience thereto, they must at the same time be so construed as to make them respectable, which cannot be done by a blind adherence to a technical interpretation which, while perhaps within the mere letter of a statute, is yet not within the reasons upon which it is based, and to which it owes its life. See the illuminating discussion in the case of an alleged robbery in Jones v. Commonwealth, 172 Va. 615, 1 S. E. (2d) 300, 302. Our own decisions in line with the principle stated are too numerous to require a collation here.

At the close of the State's testimony, appellants made a motion that the evidence be excluded and that a verdict for the defendants be directed. This motion was overruled, and perhaps correctly so at that time. Whether a directed verdict that the defendants were not guilty of the inferior offense under the old statute (Boggan v.

State, 176 Miss. 655, 170 So. 282) would have been required at the close of all the evidence is not here before us, because no peremptory charge was then requested. The defendants did request an instruction that they were not guilty of robbery with firearms, which the court refused and as already indicated this refusal was error. It is manifest from this record that no premeditated thought of robbery had ever occurred to these negroes; and the new statute cannot be put to any such use as has been here attempted.

Reversed and remanded.

PARTIALLY DISSENTING OPINION.

**Smith, C. J.**, delivered a partially dissenting opinion.

I do not disagree with the construction here placed on Chapter 328, Laws of 1932, nor with the holding that this case does not come within it when so construed. I think, however, that the judgment of the court below should be affirmed except insofar as it imposes the sentence and to that extent it should be set aside and remanded for sentence under Sections 1126 and 1128 of the Code. The only effect of Chapter 328, Laws of 1932, is to raise the punishment for robbery, as defined by Section 1126, Code of 1930, from imprisonment to death, when the violence by which it is committed is inflicted by means of a deadly weapon. A conviction under Chapter 328, Laws of 1932, therefore necessarily includes a conviction of robbery, defined by Section 1126 of the Code, and when the only error in the verdict is that, after finding the defendant guilty of robbery, the jury went further than the evidence justified and found that the robbery was committed by means of a deadly weapon, the verdict should remain in force as to conviction for the robbery and set aside only as to the finding that the robbery was committed with a deadly weapon. Under the indictment, the jury had the right under Section 1280 of the Code to convict the appellant of a simple robbery under Section 1126 of the Code. Boggan v. State, 176

Miss. 655, 170 So. 282. Such a conviction is included in the verdict here rendered, and should remain in force when no error appears therein. I do not understand the Court to here hold that the appellant could not have been convicted on this evidence of a simple robbery. See also my dissenting opinion in Millwood v. State, 1 So. (2d) 582, 190 Miss. 750, this day decided.