342 So.2d 295 (1977)
Charles R. BRADY, Chairman, State Tax Commission, Petitioner-Appellant,
v.
JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Respondent-Appellee.
No. 48955.
Supreme Court of Mississippi.
January 12, 1977.
Rehearing Denied March 2, 1977.
*296 Joe D. Gallaspy, James H. Haddock, William N. Lovelady, Jr., Jackson, for petitioner-appellant.
Watkins, Pyle, Ludlam, Winter & Stennis, L. Arnold Pyle, David B. Grishman, Warren V. Ludlam, Jr., Jackson, for respondent-appellee.
Before PATTERSON, SMITH and LEE, JJ.
PATTERSON, Presiding Justice, for the Court:
The Mississippi State Tax Commission brings this appeal from a decree of the Chancery Court of the First Judicial District of Hinds County. It held John Hancock Mutual Life Insurance Company was not subject to Mississippi state income tax upon interest from its mortgage loan investments within this state. The decree reversed an order of the Mississippi State Tax Commission of May 15, 1973, assessing income tax and interest of $228,481.19 against John Hancock Mutual Life Insurance Company on interest income for the taxable years 1969, 1970 and 1971 from loans secured by real property situated in this state.
The appellee, John Hancock Mutual Life Insurance Company, hereinafter Hancock, is a foreign corporation qualified with the State Insurance Commission to conduct life, health, accident and variable insurance business in Mississippi. It is not qualified with the Secretary of State or other agency to conduct a different business within the *297 state. The mortgage investment and insurance activities of Hancock are separated into two divisions, but when combined, constitute the corporation. The Mississippi State Tax Commission, hereinafter Commission, contends the divisions of Hancock are interrelated and dependent upon each other because the premium income from insurance is invested into mortgage loans from which interest income is earned. This income is then employed by Hancock to service its insurance obligations and any surplus remaining is returned to its policy holders through dividends. We note that for two of the three years spanning this case Hancock experienced a net loss from its insurance business within the state, but when the mortgage investment income was included, a net profit resulted.
Hancock acknowledges that an insurance company must receive income from investments for the conduct of its business. It maintains, however, that the investments secured by property within this state are separate and apart from its insurance business.
As part of its overall business the appellee makes loans to local residents secured by mortgages on real property within the state. These loans are closed, the deeds of trust are recorded and foreclosures, when necessary, are conducted within this state. A member of the local bar is substituted as trustee by Hancock to transact foreclosures. All notes, deeds of trust and mortgages are transferred to Hancock's domicile in Massachusetts after the loans are closed and the deeds of trust are recorded in the county of the security.
Hancock maintains insurance offices and agents in the state. It engages a salaried employee who devotes his time exclusively to its mortgage lending business in Mississippi, Arkansas and Louisiana. This employee works from the appellee's office in Memphis, Tennessee one or more days each week. However, since he resides in Cleveland, Mississippi, the Commission contends he utilizes his home as an office the remainder of the week for the appellee's in-state mortgage lending activities. Hancock owned 300, estimated, Mississippi farm loans during the tax period in dispute.
Hancock's residential and commercial loans secured by local property were transacted through Bridges Loan & Investment Company of Jackson, Mississippi for the time involved. Bridges was without restriction to conduct similar business with other investment companies. Its activities for Hancock were substantial and paid for by a percentage of annual interest collected.
For the years 1969, 1970 and 1971 Hancock paid no state income tax on the interest income earned from its mortgage lending activities in Mississippi. The Commission, then chaired by Arny Rhoden, pursuant to Mississippi Code Annotated section 27-7-23(1)(a) (1972) and 27-7-49 (1972), assessed the company $223,456.60 in income taxes for these years. The assessment was based upon a net investment in Mississippi for interest income of $2,235,604 in 1969, $2,184,941 in 1970 and $2,160,993 in 1971.
The parties agree the promissory notes are "intangibles" for tax purposes.
On appeal from the Commission's order to the Chancery Court in a trial de novo [Mississippi Code Annotated section 27-7-73 (1972)] the court concluded:
The issue is simply whether the Commission's assessment should be upheld under the theory that the promissory notes in question have acquired a "business, commercial or actual situs" within this state, or whether in accord with Hancock's contentions, there is not a sufficient nexus to link evidences of ownership of intangible property with any such situs.
After stating the issue, the chancellor found, among other things:
... It is axiomatic that an insurance company must make investments and receive income therefrom for the proper conduct of its business... .
* * * * * *
Hancock makes mortgage loans to Mississippi residents, secured by real property within this state. Its lending activities *298 are separate and apart from its insurance business. .. .
The court concluded the agreement of Hancock with Bridges was nonexclusive and that the method utilized by it in investing mortgage money was the same as other nonresident investors. It also determined the officials of the Tax Commission, as well as former officials, were for many years aware of the exclusion from tax of intangible income secured by property in this state prior to the present assessment.
In construing Mississippi Code Annotated section 27-7-23 (1972), designating the items of gross income of foreign corporations classified as derivative from sources within this state, the trial judge was of the opinion the section contained conflicting specific and general provisions necessitating a choice between the two to determine which had application. He concluded the specific portion of the statute to be:
Net income of nonresident and foreign taxpayers:
(1) In the case of foreign corporations or of individuals, partnerships, trusts or estates, not residents of the State of Mississippi, the following items of gross income shall be treated as income from sources within the state:
(a) Income from intangible property of any kind or nature, if the evidence of ownership has acquired a business, commercial, or actual situs in this state;... (Emphasis added.)
Thus it prevailed over the last sentence of Subsection (1)(a) which the court considered general and nonspecific. It follows:
There shall be reported any and all income from activities or transactions engaged in within this state for the purpose of financial profit or gain, whether or not the taxpayer is qualified to do business in this state, maintains an office or place of business, or the activity or transaction is in, or connected with, interstate or foreign commerce.
The trial court construed the first section to require evidence of business situs. It thereby rejected the Commission's contention that the lands are protected by the laws of this state, the deeds of trust are of record in this state and the laws of this state protect the mortgagee and furnish the sole means of enforcing its lien. The basis for rejection was that the facts were insufficient to create a nexus between the security and the intangibles, the notes.
The trial court, in separate findings, held the evidence did not establish a business connection between Hancock's insurance division and investment division within the state so that the income-producing intangibles could be taxed here.
Finally, it held that the Commission regulations were so long continued they had, in effect, the force of law because the legislature, aware of the regulations, had acquiesced therein by not enacting laws to the contrary.
We first address the trial court's construction of the statute. In doing so we think the legislature's intention must be determined by the total language of the statute and not from a segment considered apart from the remainder that the overall intention may be decided without adjudicating which of two provisions prevails. It is also proper in considering intent to use the ordinary meaning of words at the time and under the circumstances in which they were written. In Fortenberry v. State, 190 Miss. 729, 1 So.2d 585 (1941), we stated:
In considering the meaning and effect of a new and supplemental enactment, which by an express provision disclaims the purpose to repeal any existing law, there is, more than in the ordinary case, the duty of the court to take into consideration all the facts and circumstances leading up to the new enactment, the developments in the history of the times and the particular characteristics of the specific evil which the new and supplemental statute was designed to curb, ... . (190 Miss. at 735-736, 1 So.2d at 587)
Regardless of whether the trial court was correct in finding the first portion of the statute was specific and prevailed over the latter and general portion of the statute, *299 there remains the necessity of deciding if the construction placed upon the specific portion correctly reflected the legislative intention.
We observe the times, history and interpretations of the statute as it progressed to its present form to determine the real intention of the legislature. See Zeigler v. Zeigler, 174 Miss. 302, 164 So. 768 (1935). The state's first income tax law was enacted in 1912. Section 15(1)(a), Chapter 132, Laws of 1924, expressed the law as it was rewritten in pertinent part:
Section 15. (1) That in the case of foreign corporations ... the following items of gross income shall be treated as income from sources within the state.
(a) ... [I]nterest on bonds, notes, or other interest bearing obligations of residents, ... provided, income from money loaned by ... foreign corporations ... shall not be included as taxable income. ... (Emphasis added.)
The law was rewritten in 1934 and 1936 without material change in the provisions now pertinent.
The Commission's contemporaneous interpretation of the statute, for administrative purposes, and part of its history appears in its Regulation Number 1 (1924), Article 166, as follows:
Nonresidents, foreign corporations, and citizens of foreign countries shall include as gross income from sources within the State all income of every sort derived from business done or property located within the State; except that interest on bonds, notes or other interest-bearing obligations of residents, corporate or otherwise, need not be included. (Emphasis added.)
The Commission's Regulations for 1928, 1932, 1934 and 1937 remained the same. We observe the statute and regulations by excepting from the income of nonresidents the interest on residents' notes or interest-bearing obligations, evidently led to the belief of a disparity between the assessment of interest income of domestic and foreign corporations.
A suit followed in 1938 for construction of Section 15(1)(a) above. This Court determined the legislature's intention was that domestic and foreign corporations were to be treated equally. In Mississippi Cottonseed Products Co. v. Stone, 184 Miss. 409, 184 So. 428 (1938), cert. den., 306 U.S. 656, 59 S.Ct. 774, 83 L.Ed. 1054 (1939), we held by considering the statute in its entirety that the legislature intended, in enumerating the items of gross income of a foreign corporation, to use the word "to" in the statute instead of the word "by" and substituted "to" for "by" so that the reading of Section 15(1)(a) was:
[P]rovided, income from any loan to nonresidents or foreign corporations or citizens of a foreign country, shall not be included as taxable income.... (Emphasis added.)
As a result the Commission altered its interpretation of the statute. Its Regulations in 1939, Article 245, read in part:
Nonresidents, foreign corporations, and citizens of foreign countries shall include as gross income from sources within the State all income of every sort derived from business done or property located within the State. (Emphasis added.)
This regulation concerning income of foreign corporations was carried forward in Regulation Number 7 (1942), Number 8 (1946) and Number 9 (1948).
It is apparent, as the trial court found, that after the Mississippi Cottonseed Products case, supra, the Commission gave literal application to the maxim mobilia sequuntur personam, meaning movables follow the person. The Commission's position prior to Mississippi Cottonseed Products was that interest on intangibles held by foreign corporations, secured by in-state real property, was not considered gross income for tax purposes because of the language of the statute. After the decision, the Commission concluded that such income must be included for tax assessment if derived from business done or from property located within the state. In practice, however, this meant that interest income from notes held out of state, though secured by in-state *300 property, was not considered generated here for tax assessments because it was thought the income was produced at the place where the note was held.
An exception, largely theoretical, to this practice existed if there was a nexus sufficient to connect the intangibles with a "business situs" in Mississippi. These conclusions and practices of the Commission are not inconsistent with Jahier v. Rascoe, 62 Miss. 699 (1885); City of Vicksburg v. Armour Packing Co., 24 So. 224 (Miss. 1898); and Gully v. C.I.T. Corporation, 168 Miss. 268, 150 So. 367 (1933), which hold that the situs of intangible property is generally the domicile of the owner. The cases acknowledge the difficulty of determining business situs, but conclude that it was, more or less, connected with a degree of permanence of location of the credits, or with a purpose to incorporate them when collected into the mass of property already in the state.
The difficulty in application of the exception did not pass unnoticed. In 1950 Henry N. Eason, Chief of the Division of Income Tax, and other officials of the Tax Commission, including the general counsel, appeared before a tax study committee of the legislature for the purpose of outlining recommendations for changes in the tax laws. Among those submitted were: That the income tax law be rewritten and that an amendment be made relating to the definition of "gross income received by a nonresident," because the Income Tax Division had consistently held income from intangible property held out of state could not be taxed unless there was an in-state business situs. On October 4, 1950, Eason submitted a report to the Chairman of the Commission detailing its recommendation to the legislature. It was:
[This Section] related to nonresidents or foreign taxpayers. Subsection 1(a) recites the items of gross income which shall be treated as gross income within the State. I quote a part of that Subsection:
Insurance premiums, interest on bonds, notes or other interest bearing obligations of residents, corporate or otherwise; the amount received as dividends from domestic corporations, provided, income from any loan to nonresidents or foreign corporations, or citizens of a foreign country, shall not be included as taxable income, or from foreign corporations of which more than fifty percent of the gross income was derived from sources within the State. This language should be stricken from the statute for the reason that we cannot tax the intangible income of a nonresident unless the evidence of ownership has acquired a business situs within Mississippi. There might be substituted therefor, "Insurance premiums and income from intangibles, when the intangible property which produces the income has acquired a business situs within this State... ." (Emphasis added.)
The next legislative session amended the Income Tax Law by rewriting Section 11, Chapter 402, Laws of 1952. It appeared as Section 9220-12, Mississippi Code of 1942, Recompiled, in part as follows:
(1) In the case of foreign corporations ... the following items of gross income shall be treated as income from sources within the State:
(a) Interest on ... notes or other interest-bearing obligations, ... if the evidence of ownership has acquired a business situs in this state. (Emphasis added.)
Afterward, the regulations of the Commission continued to recite that income from intangibles held out of state was to be considered as having an in-state source if it was derived from services rendered, business done, or from property located within the state, i.e. a business situs.
The critical issue remained as before, what criteria were employed in determining business situs. The Commission's attitude was perhaps best expressed by its Regulation Number 7 issued before the 1952 act and Regulations Numbers 10 and 11 thereafter repeating it. The regulation:
Intangible personal property has a business situs in this State if it is employed as capital in this State or the *301 possession and control of the property has been localized in connection with a business, trade or profession in this State so that its substantial use and value attach to and become an asset of the business, trade or profession in this State. For example ... if a nonresident maintains a branch office here and a bank account on which the agent in charge of the branch office may draw for the payment of expenses in connection with the activities in this State, the bank account has a business situs here. (Emphasis added.)
This interpretation was consistent with the Commission's policy for years. It maintained that a "business situs" required a degree of permanence evidenced by offices, agents, bank accounts or some such symbol. This premise was likely thought necessary to overcome the inference arising from the legal fiction of mobilia sequuntur personam as well as analogy to our case law. In the past we have held that promissory notes evidence the debt and deeds of trust evidence the security, and a mortgagee, until foreclosure, has only a chattel interest in the land because the mortgage is only a charge upon and not an interest in it. Buckley v. Daley, 45 Miss. 338 (1871).
The latest pronouncement of this rule is found in Baker v. Connecticut General Life Insurance Co., 196 Miss. 701, 18 So.2d 438 (1944), wherein it is stated:
The beneficiary in a deed of trust the character of the one here in question is not vested with the title to the land described therein. He has no estate in the land, and cannot convey it to another; he has an interest in it only to the extent that he can cause the trustee in the deed of trust to sell the land and apply its proceeds to the payment of the secured debt... .
By whatever means the Commission was influenced to its interpretation of the statute, in simple application it meant that promissory notes secured by real property in this state when transferred to a nonresident owner had the effect of transmitting the source of income to the nonresident's state. The "business situs" was thus indelibly stamped upon the state in which the intangible was held, thereby precluding income assessment in this state. The Commission's response to inquiries compels this conclusion. A letter of October 3, 1957, from the Income Tax Division to United Benefit Life Insurance Company of Omaha, Nebraska, is typical. It follows:
Your income from policy loans is derived from promissory notes executed by the policy holders. These notes, being intangible property, have a situs at your domicile unless they have acquired a business situs elsewhere. To give your notes from Mississippi policy holders a business situs in this state I believe that they would have to be accepted in Mississippi, be physically located here, the payments thereon be received and accepted here and, generally, all matters pertaining to the making, collection and handling of such notes be under the full authority of a Mississippi office as if your investment department had been decentralized to that extent.
The statute, now Mississippi Code Annotated section 27-7-23 (1972) again received the consideration of the legislature in 1958 when it was amended to its present language. That part of present concern is:
(a) Income from intangible property of any kind or nature, if the evidence of ownership has acquired a business, commercial or actual situs in this state .. . (Emphasis added.)
The legislative addition of "commercial or actual" preceding "situs," had no effect upon the Commission's assessment of income from intangibles.
The assistant to the Commission Chairman, H.I. Adcock, testified that he had been with the Commission since 1937 and that the 1958 act brought no change of policy toward intangible property held by nonresidents until a contrary position, the beginning of this suit, was taken in 1972.
Henry N. Eason was called by Hancock as an adverse witness and stated that he was Chief of the State Income Tax Division for many years preceding his retirement in *302 1965. He testified the Commission's policy, when intangible property was owned outside the state though secured by local property, was not to assess such income for income tax and neither the 1952 or 1958 legislative acts altered this position.
Attorney Henry A. Fly was employed by the Commission from 1947 to 1961. His primary duties were with income and franchise taxes. He testified the Commission's position was that notes held outside Mississippi, although secured here, did not have local business situs and interest therefrom was not taxable.
These positions were the same as expressed on January 5, 1953, through a certificate of overpayment executed by A.H. Stone, Chairman of the Commission, to the Auditor of Public Accounts, concerning a refund of taxes to Commonwealth Insurance Company. The certificate stated in explanation:
... It is well established that a nonresident may not be taxed on intangible income unless the assets which produce the income acquire a business situs in Mississippi... .
The trial court concluded that interest income from intangibles held out of state could not be subject to income tax unless (a) the evidence of indebtedness was kept in this state, in which case it would have an actual situs, or (b) such interest income was employed as capital in this state, or (c) such interest income was localized in this state with the business of such nonresident or foreign corporation, or (d) such interest had become an asset of the business of the foreign corporation in this state. It was further held that the Commission's policy, substantially as above, was well known to nonresidents and foreign corporations for many years prior to this assessment.
The issues presented are, whether the trial court correctly construed the legislature's intention in amending the statute in 1952 and 1958, whether there was error in finding the decentralization of Hancock for the conduct of its business separated the divisions for income tax assessments and finally, whether long-continued administrative construction has the effect of law.
We are of the opinion the lower court erred in its construction of Mississippi Code Annotated section 27-7-23 (1972) as did the Commission prior to the assessment. The Commission's recommendation to the legislature preceding the 1952 amendment referred to its inability to assess income from intangibles held by nonresidents. It specifically recommended:
... This language should be stricken from the statute for the reason that we cannot tax the intangible income of a nonresident unless the evidence of ownership has acquired a business situs within Mississippi. There might be substituted therefor, "Insurance premiums and income from intangibles when the intangible property which produces the income has acquired a business situs within this State... ." (Emphasis added.)
The legislature reacted to the Commission's plea, "we cannot tax the intangible income of a nonresident" by adopting the words "unless the evidence of ownership has acquired a business situs within Mississippi." This language was transferred almost verbatim from the recommendation into the existing statute so that it read:
(1) In the case of foreign corporations ... the following items of gross income shall be treated as income from sources within [this] state:
(a) [Interest on] ... notes or other interest-bearing obligations, . . if the evidence of ownership has acquired a business situs in this state. (Emphasis added.)
In our opinion the amendment expressed the legislative purpose of taxing income generated from out-of-state intangibles, secured here, by substituting "evidence of ownership" for the actual business situs concept previously thought essential provided such evidence had acquired an in-state business situs. It intended to deemphasize the importance the Commission had previously attached to business situs as a necessary element of the assessment. We are persuaded to this view by the words lifted *303 from the recommendation as well as those suggested by it but which were rejected. The adoption of the suggested words, "insurance premiums and income from intangibles when the intangible property which produces the income has acquired a business situs within the state" would have continued income assessments contingent upon there being an in-state business situs with its attendant connotations of permanence, agents, bank accounts and capital. We think the legislature intended to remove such impediments to the collection of taxes from intangibles by replacing it with "evidence of ownership," a less burdensome standard.
Incidental to the foregoing we have held the court's duty in construing statutes is to give consideration to the purpose and the object to be accomplished so the real intention of the legislature may be reached. We stated statutes should be given a reasonable construction, and if susceptible of more than one interpretation, they must be given that which will best effectuate their purposes rather than one which would defeat them. Akers v. Estate of Johnson, 236 So.2d 437 (Miss. 1970); Mississippi State Tax Comm'n v. Hinton, 218 So.2d 740 (Miss. 1969); Thornhill, et al. v. Ford, 213 Miss. 49, 56 So. 23 (1952); Conard Furniture Co. v. Mississippi State Tax Comm'n, 160 Miss. 185, 133 So. 652 (1931); and State Bd. of Education v. Mobile & O.R. Co., 72 Miss. 236, 16 So. 489 (1895). Moreover, meaning must be given to the amending words as they mesh into the statute because they were legislatively chosen for definite purpose. In construing the statute to diminish the burden of establishing business situs and replacing it with evidence of ownership of the intangible, we are able to give meaning to the amending words consistent with the legislature's purpose of collecting taxes, its real intention.
Unfortunately, the phrase "business situs" was retained in the statute thereby frustrating the legislative intent because the Commission's practices continued as before. The Commission's interpretation not only overlooked the amendment, but also the last portion of the statute,[1] which it complemented, requiring all income from business activities within the state to be reported.
Undoubtedly, this construction led to the 1958 amendment which added the following emphasized words to the statute, "if the evidence of ownership has acquired a business, commercial or actual situs in this state." This amendment reemphasized the legislature's intention to assess income from intangibles through evidence of ownership by broadening it beyond a business situs. Again, the words "commercial" and "actual" were deliberately chosen by the legislature in its wisdom for an intended purpose.
This elicits the query, what evidence of ownership did the legislature intend by "commercial" or "actual" situs in this state? The logical response in giving meaning to the words to accomplish the legislative purpose must be, we think, the evidences arising from the recorded security, the deed of trust, because it has commercial meaning in that it is connected with business trade and traffic in general as well as actual situs in the place of its recordation. Not only does the recordation "evidence" the security, it evidences the ownership of the intangible and thus protects the beneficiary's interest therein. It evidences also the nexus between the security and the promissory note for the business benefit of both the maker and the holder of the note.
This connection of security and debt, known to the legislature, springs directly from Mississippi Code Annotated section 89-7-3 (1972) which requires all deeds of trust whatsoever to be recorded to protect the beneficiary against the claim of subsequent creditors or purchasers. Section 89-5-17 directs that all assignments of indebtedness secured by a deed of trust be entered *304 on the margin of the record and provides penalty for failure to do so. Section 89-5-21 requires the satisfaction of a deed of trust to be entered upon the record and again provides penalty for failure to do so. Section 89-5-37 mandates that the name of the beneficiary be disclosed in the deed of trust and provides penalty for failure to comply. Finally, Section 89-5-45 voids the substitution of a trustee in deeds of trust unless it appears of record in the office of the county where the land is situated.
We conclude the legislature intended by evidence of ownership to refer to the instrument actually used to describe the security for the intangible because it names the beneficiary, the mode and time of payment, the assignments, and substitution of trustees, if any, as well as the note's satisfaction when paid, all of which "evidence" ownership. Moreover, when recorded, this evidence has an actual situs in the county of the security. We conclude the trial court erred in its construction of the statute because it defeated the legislative purpose. This gives recognition to the mortgagee's interest in the security even though it only be a charge upon the security and not a vested interest in it. Indeed, the rudimentary genesis of interest income is a combination of the security and debt and not a separation of it. The legal fiction of mobilia sequuntur personam transferring the interest generating intangible to the domicile of a foreign corporation or nonresident must give way to the business reality that the security breathes life into the note and is inextricably embedded in it, defying such separation.
We are of the further opinion that the division of the corporation by Hancock did not separate the insurance and investment functions for income assessment purposes. Hancock's argument appears paradoxical in that it contends on one hand that an insurance company must make investments and receive income therefrom for the conduct of its business and on the other that it is separated for tax purposes. But be this as it may, the evidence is overwhelming that Hancock has offices and agents conducting its insurance business within this state in substantial amount. It also reveals that for two of the three years spanning the assessments, the investments division income resulted in an overall profit for the corporation. It reflects also that the agents, and other personnel, when inquiry was made concerning loans, were instructed to direct loan applicants to its salaried investment employee for the conduct of this business. We are of the opinion the two divisions of Hancock are interdependent and related to each other for income tax assessments and that the trial court erred in finding they were separate and independent.
The finding that the administrative policy of the Commission had been consistent since 1924 until this assessment in 1972 is doubtless correct. The conclusion that the legislature knew or was presumed to have known of the policies is also supported in law. However, the trial court's conclusion that the legislature intended to abide by the Commission's interpretations because it did not define the term "business situs" was error. This determination overlooks the 1952 and 1958 statutory amendments which were designed to change the former constructions and practices so the income from intangibles would be taxed. We are of the opinion the construction for administrative purposes though continued was erroneous and does not have the force of law. In Commissioner v. Lake, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743, reh. den., 356 U.S. 964, 78 S.Ct. 991, 2 L.Ed.2d 1071 (1958), it was held:
... Prior administrative practices are always subject to change through exercise by the administrative agency of its continuing rule-making power.
It follows that if an administrative body has the authority to change its practices, they are also subject to change by judicial opinion or legislative enactment. In Barr v. Delta & Pine Land Co., 199 So.2d 269 (Miss. 1967), we held the construction of a statute by those administering it is usually binding on them or their successors because the public relies upon it, but this did not mean *305 that an administrative body was powerless to change its interpretation by a new rule under changed situation or varied circumstance. We also held that legislative enactment or court decision supersedes administrative construction which places it beyond repeal by subsequent administrative rule change so long as the statute remains substantially unchanged. In sum, we are of the opinion the amendments were properly construed by the Commission in 1972 when this assessment was made and that the trial court erred in invalidating it.
On cross-appeal Hancock argues the trial court erred in not finding the Commission's assessment unconstitutional in that it transgresses upon the due process and equal protection provisions of Section 1 of the Fourteenth Amendment to the Constitution of the United States and Article 3, Section 14 of the Mississippi Constitution (1890) and impinges upon the interstate commerce provision of Article 1, Section 8, Clause 3, of the Constitution of the United States. We are of the opinion the cross-appeal is without merit in view of the holding in Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1938), and our holding in Akers v. Estate of Johnson, 236 So.2d 437 (Miss. 1970).
The decree of the chancery court is reversed and the order of the Tax Commission is reinstated.
REVERSED AND ORDER OF THE TAX COMMISSION IS REINSTATED.
GILLESPIE, C.J., INZER, P.J., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
NOTES
[1] ... There shall be reported any and all income from activities or transactions engaged in within this state for the purpose of financial profit or gain, whether or not the taxpayer is qualified to do business in this state, maintains an office or place of business, or the activity or transaction is in, or connected with, interstate or foreign commerce.