IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-30507
_____


In The Matter of:  LAURENCE LUCIUS LAMBERT,

                                                    Debtor
----------------------------------
LAURENCE LUCIUS LAMBERT,

                              Appellee-Cross-Appellant,

                    versus

MISSISSIPPI STATE TAX COMMISSION,

                              Appellant-Cross-Appellee.
_____

Appeals from the United States District Court for the
Eastern District of Louisiana, New Orleans
_____
June 22, 1999

Before KING, Chief Judge, and  REYNALDO G. GARZA and JOLLY, Circuit
Judges.

E. GRADY JOLLY, Circuit Judge:

In this case, Lawrence Lucius Lambert, a nonresident of
Mississippi, sold Mississippi land he personally owned, along with
Mississippi land he owned through an S corporation.  Because the
sale by the company was structured as an installment sale combined
with the dissolution of the company, the company did not recognize
any capital gain from the transaction under federal tax laws.  In
a subsequent bankruptcy proceeding, the Mississippi Tax Commission
("MSTC") claimed taxes for the capital gains from the sale of all
the land and for the income from interest on promissory notes
involved in the sale.  The bankruptcy court granted a judgment

against Lambert for the gains recognized on the Mississippi land he personally owned but not for the interest income on the promissory notes or the gains from the sale of the Mississippi land owned by his S corporation. Both Lambert and the MSTC appealed the bankruptcy court's decision to the district court for the Eastern District of Louisiana, which affirmed the bankruptcy court. Both parties now appeal the district court decision. Finding no error on the part of either the bankruptcy court or the district court, we affirm.

I

This case begins with Lambert's purchase of real estate property ("personal property") in Bay St. Louis, Mississippi. In addition to that purchase, he set up an S corporation, Lambert Land Company ("Lambert Co."), to buy property (the marina property) that bordered his personal property.

On January 27, 1992, Lambert Co. adopted a plan of liquidation under §§ 331, 453B(h) of the Internal Revenue Code and § 79-4-14.03 of the Mississippi Code (articles of dissolution).[1] By January 16, 1992, Lambert Co. had agreed to sell the marina property to Mardi Gras Casino Corporation ("Mardi Gras"). Lambert also signed an agreement to sell his personal property to Mardi Gras. In exchange

---

[1]Under § 453B(h), when an S corporation adopts a plan of liquidation, sells its assets for installment notes, and distributes those notes to its shareholders in complete liquidation within 12 months after adoption of the plan, the corporation recognizes no gain from the sale of its assets and the shareholders are treated as if they had sold their shares in the S corporation for the value of the promissory notes.

for the combined properties, Mardi Gras paid two promissory notes, one valued at $500,000--that was due by April 1992--and one valued at $12 million--that was to be paid in installments. Both notes were secured by the property. As we have noted, when Lambert Co. was liquidated, Lambert became the owner of its notes--making Lambert owner of both notes.

Lambert received the first installment on the $12 million promissory note in October 1992. Lambert then received monthly installments until the note was paid in full in 1993. Lambert Co. never received any cash with respect to either of the two notes. The total amount of interest accrued on the combined notes ($12 million and $500,000) net of payment of sales commissions, was $349,814 in 1992 and $1,348,170 in 1993.

The contract made no allocation between Lambert's share of the purchase price and Lambert Co.'s share. However, Lambert's 1992 and 1993 federal individual income tax returns showed that the Bay St. Louis property he owned individually was sold for $2.5 million, and that he received $366,774 of that amount during 1992 and $2,133,226 during 1993. These federal tax returns showed that the corporation's property was sold for $10 million, $866,873 of which was received during 1992 and $9,133,127 during 1993.[2]

_____

[2]Lambert now contends that this apportionment was an error and that the value he received for the land he sold should be the fair market value of the land at the time of sale, $422,800. According to Lambert, he originally filed a Form 8594 in which he erroneously valued Lambert Co. at $10 million. Lambert claims that, after making this one error, his accountant carried this error through his books, leading to multiple appearances of the error in his

3

To sum up then, Lambert entered into a transaction from which he realized three different kinds of potentially taxable gain: First, he realized a gain for the sale of his personal property--the difference between his adjusted basis in the property and the value of some percentage of the two promissory notes. Second, Lambert Co. exchanged the marina property for the remaining percentage of the promissory notes. Since that transaction amounted to a liquidation, for which Lambert Co. realized no gain on the property, Lambert personally recognized a gain from the dissolution--the difference between his adjusted basis in the shares of Lambert Co. and the value of the percentage of the promissory notes he received for them. Finally, Lambert realized interest on the two promissory notes.

During 1992 and 1993, the relevant time period of the transaction, Lambert was not a resident of Mississippi. Lambert also did not carry on business in Mississippi. Lambert did not file a 1992 or 1993 individual Mississippi tax return. Lambert Co.'s 1992 Mississippi tax return indicated that the company suffered a loss. On October 3, 1995, the Mississippi State Tax Commission ("MSTC") assessed Lambert with additional state income taxes for the years 1992 and 1993.

Lambert petitioned the MSTC's Board of Review, under the Mississippi statute, and the board reduced the assessment to $1,012,768.75. Lambert filed for bankruptcy protection on

---

records.

August 19, 1996.  On January 24, 1997, the bankruptcy court for the Eastern District of Louisiana entered its Reasons for Order in which it held:

1.  Lambert did not owe income taxes for the gain he realized from the sale of Lambert Co.'s assets and its subsequent dissolution.

2.  Lambert did not owe income taxes for interest he earned on the two promissory notes as the situs of the notes was not Mississippi.

3.  Lambert owed Mississippi income taxes for his gain from the sale of his personal property, for which he had received $2.5 million.

4.  Lambert was not subject to a penalty for fraudulently underpaying Mississippi taxes pursuant to § 27-7-105(2) of the Mississippi Code.

Both parties then appealed the bankruptcy order to district court. The MSTC argued that the bankruptcy court erred in rulings 1, 2, and 4; while Lambert argued that the bankruptcy court erred in ruling 3.  The district court affirmed the bankruptcy court.  Both parties timely appealed the district court's decision.

III

Because this case originated from a bankruptcy court, we review findings of fact made by the bankruptcy court for clear error.  With respect to questions of statutory interpretation, we apply a de novo review.  As a party challenges each of the four holdings by the bankruptcy court, we address each in turn.

A

The bankruptcy court's ruling with respect to dissolution of Lambert Co. was based on its holding that Mississippi law applies

5

the Internal Revenue Code provisions--§§ 453 and 453B--to installment contracts, including those involving the dissolution of S corporations. Under §§ 453 and 453B, neither Lambert nor Lambert Co. recognized any gain from the sale of Lambert Co.'s assets. Lambert's gain came only from the event of exchanging his shares in Lambert Co. for the promissory notes. Lambert could, therefore, only be taxed for the profits he realized from "selling" his shares in Lambert Co., a form of income that Mississippi could not reach because Lambert was not a resident of Mississippi.

On appeal, the MSTC makes three arguments. First, the MSTC argues that, in addressing tax questions, the court should look to the substance of a transaction rather than the form. Second, the MSTC disputes the bankruptcy court's legal finding that Mississippi law looks to IRC §§ 453 and 453B for rules governing the dissolution of S corporations. Finally, the MSTC argues that, because the situs of the promissory notes is Mississippi, Lambert should somehow be subject to taxation for the gains Lambert Co. would have realized from selling its land, if that sale were not a dissolution governed by §§ 453 and 453B.

After a careful review of the district court and bankruptcy court decisions, we find no error. There is no support for the MSTC's argument that Lambert structured the dissolution to comply only with the form and not the substance of §§ 453 and 453B. The provisions in the Mississippi Code with respect to installment sales adopt all of the federal provisions, and because §§ 453 and

6

453B apply, Lambert's gain here comes from his exchange of the shares of Lambert Co. for the promissory notes. As such, he can only be taxed on that gain if Mississippi can reach the gain he recognizes from the sale of his shares in Lambert Co. The MSTC has not argued on appeal that it can tax that gain. We therefore conclude that there was no error in holding that Lambert did not owe Mississippi taxes for Lambert Co.'s sale of its assets and the subsequent dissolution of Lambert Co.

B

The bankruptcy court held that the promissory notes did not have a taxable situs in Mississippi. The relevant section of the Mississippi Code is § 27-7-23(b)(1) which reads:

> (b) Nonresident individuals, partnerships, trusts and estates.
>
>> (1) The tax imposed by this article shall apply to the entire net income of a taxable nonresident derived from employment, trade, business, professional, personal service or other activity for financial gain or profit, performed or carried on within Mississippi, including the rental of real or personal property located within this state or for use herein and including the sale or exchange or other disposition of tangible or intangible property having a situs in Mississippi.

Under § 27-7-23(b)(1), the MSTC is entitled to tax for "the disposition of . . . intangible property having a situs in Mississippi." Arguably, income earned from intangibles with a situs in Mississippi could fit into this category. What constitutes an intangible with a situs in Mississippi, however, is not entirely clear.

7

The MSTC argues that a promissory note that is secured by a deed of trust filed in chancery court in Mississippi is an intangible with a situs in Mississippi. Lambert disagrees, citing to Gulley v. C.I.T. Corporation:

> The general rule as to the situs of invisible and intangible personal property--as notes, bonds, etc.--is that it follows the domicile of the owner, and it is held to be taxable at such domicile. But it is an exception to the general rule that, where such credits acquire a business situs different from that of the domicile of the owner, then they may be taxed at such business situs.

150 So. 367, 369 (Miss. 1933).[3]

In response, the MSTC argues that Brady v. John Hancock Mut. Life Ins. Co., 342 So.2d 295, 303 (Miss. 1977), requires us to hold that a promissory note secured by property in Mississippi has its situs in Mississippi. As both Lambert and the lower courts note, however, Brady dealt with § 27-7-23(c)(2)(B)(ii), which applies to foreign corporations doing business in Mississippi, not with § 27-7-23(b)(2), which deals with out-of-state individuals. Thus, the lower courts did not find Brady applicable to this case.

In this case, the bankruptcy court held that Lambert did not engage in business in the state of Mississippi. Because it would therefore be impossible for a promissory note owned by Lambert to have a business situs in Mississippi, we follow the general rule

---

[3]The MSTC argued that Gulley is no longer applicable as Mississippi has subsequently modified its code by adding § 27-7-23(c)(2)(B)(ii) to provide for taxation of intangibles. See Brady v. John Hancock Mut. Life Ins. Co., 342 So.2d 295, 303 (Miss. 1977). The district court seemed to partially agree, noting that the bankruptcy court's cite to Gulley is questionable. Gulley, however, is still good law with respect to § 27-7-23(b)(2).

stated in <u>Gulley</u> that situs of intangible personal property is the domicile of the owner. We therefore affirm the district court's ruling on this count as well.

C

Lambert argued below that his apportionment of the sale price was in error. On cross-appeal, Lambert argues that, because there is no specific figure for the price he received for the land he personally owned, the bankruptcy court should have used an appraisal of the land's fair market value as an estimate of what he received. Because the fair market value of the land at the time of sale is arguably lower than Lambert's adjusted basis in the land, Lambert argues that he did not realize any gain on the sale of the land.

We review the question of whether the bankruptcy court properly apportioned the value of the land under a clearly erroneous standard. In this case, Lambert has, at one point in time, represented that he received $2,500,000 for the land he owned personally. The bankruptcy court did not have to accept his self serving testimony that the representation was an error. We therefore find no clear error in the bankruptcy court valuing Lambert's personal property at that amount.

D

Because Lambert did not file tax returns with Mississippi for 1992 and 1993, the MSTC argues that the bankruptcy court erred when it refused to find that Lambert acted fraudulently by understating

9

the amount of income he realized for those years. Under § 27-7-105(2) of the Mississippi Code, a taxpayer may be assessed a 75% penalty if an underpayment is attributable to fraud. The bankruptcy court concluded that the MSTC failed to produce evidence of fraud. The bankruptcy court also noted that the MSTC did not urge such a penalty in the memo it filed with the bankruptcy court.

Whether we assess the bankruptcy's determination that Lambert did not commit fraud for plain error or for clear error, the result is the same. Our review of the record reveals that the only evidence that Lambert acted fraudulently is the opinion testimony to that effect by a member of the board of review of the MSTC. Consequently, we find no reversible error in the bankruptcy court's finding that this testimony, standing alone, is insufficient to prove fraud.

## III

In this case, Lambert and Lambert Co. entered into a series of transactions from which Lambert emerged, having realized income from the sale of Lambert Co.'s assets that was not subject to Mississippi tax. The question on appeal is not whether these transactions were structured in such a way that they avoided Mississippi tax--they clearly were--but, instead, whether they legally complied with Mississippi's tax laws. We conclude that the subject transactions do comply and therefore AFFIRM the district court's rulings with respect to these transactions. As for the remaining two issues--whether the bankruptcy court erred in

10

allocating the value of the property and in concluding that Lambert did not act fraudulently in not filing a Mississippi tax return--we also find no reversible error and therefore the district court is in all respects

A F F I R M E D.