RICHARD HERMANN AND JANE DEMUTH *v.* STATE

No. 41660          November 7, 1960          123 So. 2d 846

*L. Bryan Dabney,* Vicksburg, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

McGehee, C. J.

The appellants, Richard Hermann and Miss Jane Demuth, were jointly indicted, tried and convicted of the crime of armed robbery in Warren County, Mississippi and the former was sentenced to serve a term of six years in the state penitentiary and the latter a term of three years. From these convictions and sentences, they prosecute this appeal.

On December 7, 1959, Richard Hermann and Miss Jane Demuth left the city of New York in the latter's Ford automobile and drove to Orlando, Florida where he testified that he desired to contact his sister and that upon learning that she had gone to California, they set out en route to the State of California. They left New York with approximately $70 to $80 which constituted all the money that the two of them had with them. While in Orlando, Florida, they placed in a pawn shop one of the three rifles that they had with them and obtained a loan of $35. They decided to leave Orlando, Florida on December 14, 1959 for the State of California by way of Vicksburg, Mississippi.

Knowing that the gasoline tank on the automobile, which had a capacity of approximately eighteen gallons was almost empty and contained insufficient gas to get the car on into Vicksburg, the appellants, at about one a.m., drove up to an ethyl gasoline pump in front of the filling station and restaurant of W. O. Dewease at or near Bovina in Warren County, Mississippi and remained there until approximately seven o'clock the next morning, December 18, 1959, until the gasoline station attendant would arrive. At about fifteen minutes until seven a.m. the attendant arrived and whereupon Richard Hermann asked him "What about some gas?" Upon opening the place of business the attendant, James Roy Dewease, a brother of the owner, W. O. Dewease, stat-

ed to Hermann in substance that "I will be gone about ten or fifteen minutes to get the cook and will service your car upon my return." The motor in the automobile of Miss Demuth was not running at that time but was running when the attendant returned to the filling station. Richard Hermann then stated to the attendant, "Fill it up all the way." In the meantime the attendant had turned the switch on for the gas pumps. He then placed in the gasoline tank 16.8 gallons of gas, the price of which amounted to $6.36. While he was filling the tank with gas, both Richard Hermann and Miss Jane Demuth were on the front seat of her automobile, and he was in the driver's seat. While the attendant was hanging up the gasoline hose, after filling the tank with gasoline, Richard Hermann got out of the car and walked partly around the same. The station attendant then walked near him to inform him as to how much gasoline he had placed in the tank and what the price of the same was. The attendant testified that during that time "the woman in the car slipped over under the wheel". Richard Hermann opened the car door, and was standing with his head inside of the car in a stooping position, and then "took a step back and just wheeled with this rifle pointed at my stomach." Hermann then stated to the attendant, "Don't try anything," and when the attendant saw him wheel with the rifle on him, he raised his arms and hands automatically. The attendant testified, "He didn't tell me to throw my hands up, but they just automatically went up. I says, 'Man, what are you doing?' and he said, pitch me your car keys."

Thereupon the station attendant informed the appellants that he didn't have the car keys, that he had left them in the car that he used in going after the cook. Richard Hermann then got into the car and "the woman drove the car away."

Thus, it will be seen from the foregoing that the crime of stealthily obtaining the gasoline was completed before Richard Hermann pointed the rifle at James Roy

Dewease, with the exception that there had been no asportation of the gasoline from the place of business of W. O. Dewease at that time. The appellants were able to make their getaway with the gasoline by placing the gasoline station attendant in fear by the exhibition of the deadly weapon, telling him not to start anything, and that "if you try to follow me, I will hurt you." The car was driven away while the gasoline station attendant was still standing with his arms and hands raised in the air. At that time Wiley Tyson, father-in-law of W. O. Dewease, was on the inside of the restaurant where he could and did see Roy Dewease holding up his hands as the appellants drove the car away, but was unable to see the car or either of the appellants from the place where he was standing in the cafe or restaurant at that time.

From the scene of this crime, the appellants immediately continued on their journey to California, crossing the Mississippi River at Vicksburg and were later arrested and taken into custody at Monroe, Louisiana. They had left the State of New York with three rifles and an ample supply of ammunition, as well as a camera, fishing equipment, archery equipment and various articles of personal property, including their clothing. The rifle which was pointed at Roy Dewease was found by the officers at Monroe, Louisiana on the floor and underneath the front seat of the car. The Winchester rifle was found in a rifle case on the back seat of the car. Both rifles were loaded, and the third one which was in their possession when they left New York had been pawned as aforesaid in a pawn shop in Orlando, Florida.

Both of the defendants testified in their own behalf in this case and they conceded that when they stopped at this filling station on the night of December 18 at about one o'clock a.m. they were aware of the fact that they had a total of $.82 in their joint possession at the time they requested the gasoline station attendant to fill the tank "all the way", and that they did not in-

tend to pay him for the gasoline at the time they had the gasoline tank filled. In fact they didn't have sufficient money to have paid for the filling of an almost empty tank with approximately seventeen gallons of gasoline at the time they requested Roy Dewease to fill their tank.

The sheriff testified that Miss Jane Demuth told him that Richard Hermann drew the small rifle, the .22 caliber, on the attendant at the filling station and that she tried to persuade him not to do so. The evidence is in conflict as to which of the appellants drove the car away, but that was an issue for the jury.

The appellants rely almost entirely on Register v. State, decided by this Court on November 18, 1957 and reported in 232 Miss. 128, 97 So. 2d 919. The decision in that case followed the general rule as to what was necessary to constitute the crime of armed robbery, this being the offense of which the appellants were convicted in the case at bar. But that which distinguishes the *Register* case from the case at bar is the fact that in the instant case it was clearly shown, according to the testimony on behalf of the State, that there was no asportation of the gasoline until after the appellant, Richard Hermann, had drawn the deadly weapon on the gasoline station attendant and put him in fear whereas in the *Register* case there was no proof at all as to whether the intruder in the room of Miss June Flowers took her money out of her billfold prior or subsequent to the time that he choked her and put her in fear.

It is stated in Wharton's Criminal Law and Procedure, Anderson, Volume 2, page 243 that "In the absence of statutory modification, the constituent elements of the offense of robbery are (1) a felonious taking, (2) accompanied by an asportation, of (3) personal property of value (4) from the person of another or in his presence, (5) against his will, (6) by violence or by putting him in fear, (7) animo furandi." Again at page 252 of the same text it is stated: "The actual taking *and*

*asportation* of some of the victim's personal property is an essential element of robbery.'' (Italics ours.) Again at page 253 in this same text it is stated: ''As in larceny, there must also be an asportation or carrying away of the goods.'' In the instant case the appellant, Richard Hermann, did not take complete control and dominion over the property of W. O. Dewease until he pointed the rifle on the gasoline station attendant, James Roy Dewease, and placed him in fear by telling him, ''Don't start anything,'' and ''If you try to follow me, I will hurt you.'' This occurred after the obtaining of conditional possession of the gasoline, (on the assumption that the occupants of the car would pay for the gasoline) but prior to any attempt to asport the same. They resorted to the means of drawing the rifle in a threatening manner to make good their intention of removing the gasoline from the presence of the gasoline service station attendant *and of making good their escape.*

Again at page 263, Wharton's Criminal Law and Procedure, Anderson, Volume 2, it is said: ''The act of the defendant may either precede or be concurrent with the taking of the victim's property.'' We think that the taking away of the gasoline was contemporaneous with the pointing of the rifle at the gasoline station attendant, and that the commission of this act was essential to the completion of the crime of robbery.

After the enactment of Chapter 328, Laws of 1932, known as our ''Robbery with Firearms Statute'' this Court in the case of Fortenberry v. State, 190 Miss. 729, 1 So. 2d 585, said:

''Following upon the descent of the nation-wide financial depression, one of the effects of which was a marked increase in the crimes of larceny, robbery, and burglary, and with the advent of the automobile everywhere and the construction of improved highways, one of the criminal developments which had thrust itself, perhaps above all others, upon public attention in this State, as well as elsewhere, was the robbery of banks,

mercantile establishments, filling stations and the like, by those who had taken to banditry as a business, or who for the time being had copied the crucial characteristics of that course, and suddenly appearing and thereafter hastily escaping, would use deadly weapons in enforcing their purpose and who were so intently predetermined upon the accomplishment of that purpose that they would kill in its execution and would kill also in making their escape.''

██ █ From the foregoing views, it follows that we are of the opinion that this case is distinguishable from the case of Register v. State, supra, principally relied on by appellants, in that the drawing of the rifle on the gasoline station attendant in the case at bar was the means employed to enable them to asport the gasoline from the premises and to enable them to make good their escape.

Affirmed.

*Arrington, Ethridge, Gillespie,* and *McElroy, JJ.,* concur.