474 So.2d 612 (1985)
Eddie PRESLEY
v.
STATE of Mississippi.
No. 54858.
Supreme Court of Mississippi.
August 7, 1985.
*613 Donald J. Steighner, Columbus, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROY NOBLE LEE, Presiding Justice, for the court:
Eddie Presley was indicted in the Circuit Court of Lowndes County at the February 1982 Term, for armed robbery and as an habitual offender. He was tried on May 26, 1982, and found guilty, but the jury declined to impose life imprisonment. Thereupon, the court, Honorable Joe O. Sams, Sr., presiding, heard evidence relating to the previous convictions of Presley, and, at the conclusion of that hearing, found Presley to be an habitual criminal and sentenced him to serve a term of forty (40) years with the Mississippi Department of Corrections. The sentence was the maximum term of imprisonment prescribed by such felony and less than the defendant's reasonable life expectancy, the sentence not to be reduced or suspended, nor would Presley be eligible for parole or probation. Presley has appealed here and assigns two errors in the trial below.

I.

THE LOWER COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT EDDIE PRESLEY COULD NOT BE GUILTY OF SHOPLIFTING; HIS CONVICTION OF ARMED ROBBERY IS NOT SUPPORTED BY THE EVIDENCE, AND HIS SENTENCE OF FORTY YEARS AS AN HABITUAL OFFENDER IS IMPROPER.
The instruction referred to in the first assignment of error is, for all purposes, the request for a peremptory instruction of not guilty. We will address the assignment on that question.
On January 30, 1982, appellant was seen by employees of the Kroger Store in Columbus, Mississippi, attempting to place two packages of ribeye steaks in his trousers and under his shirt. He was able to conceal only one package of the steaks under his clothes and put the second package on a nearby shelf and began to walk quickly toward the entrance of the store. A Kroger employee called Charles Allen McCollum, manager of the Kroger store, over the intercom system and reported that a man in the cereal aisle was stuffing meat under his clothes. McCollum stepped out of his office, and Tom Lynn, head meat cutter, went with him to stop appellant, who was approaching the front doors. McCollum hollered at appellant and tried to *614 get him to halt, whereupon, appellant reached in his pocket and pulled out a pocketknife, opened the blade, and put the knife in his palm. McCollum pursued appellant at a safe distance, but was afraid of the knife, which appellant exhibited, and remained a safe distance from him for fear of getting cut. McCollum called upon appellant several times to drop the merchandise. Finally appellant pulled the steaks out of his trousers and threw them on the ground.
The police department had been notified of the incident and officers arrived in the area where McCollum and Lynn had followed appellant. McCollum pointed out the direction in which appellant had gone, and shortly thereafter, the police apprehended him.
Appellant testified in his own behalf. He stated that on the morning of January 30, he and a companion had been inside the Kroger store and had stolen three packages of meat, concealing them in their trousers. That afternoon, they returned to the Kroger store and appellant went directly to the meat box, picked up two packages of meat, walked up the aisle, got close to the shelf, and turned sideways to look in both directions so no one could notice what he did; that he was unable to put both packages inside his pants but was able to conceal one such package inside his pants and under his shirt; he opened the pocketknife in order to cut the Kroger label off the package of meat and not with the intention of threatening or harming McCollum; and that he put his knife down when the police arrested him.
There is no dispute in the facts except as to whether or not appellant took the knife out of his pocket and opened the blade for the purpose of threatening McCollum and Lynn in detaining and apprehending him, or whether he had the knife for the purpose of cutting the Kroger label from the package of meat. Appellant simply contends that, as a matter of law and fact, the evidence supports only a conviction for shoplifting, not armed robbery.
Excerpts from the testimony of the Kroger manager Charles McCollum follow:
Q Well, what happened then?
A Well, he told me that, "Here he comes; kind of motioned for him  just made a motion and said, "That's him right there". When the guy came across the front, he come through Aisle No. 5 and just kept going on out the front of the store, and I yelled to him, I said, "Hey, hey, you", you know, tried to get him to stop, and he reached in his pocket and pulled out a knife and opened his knife up and put it in his palm. He just kind of palmed it, and I seen the knife, and I said, "Hey, he's got a knife."
* * * * * *
Q All right, you've got a pen in your pocket I see. If you would, take your pen and show the jury what he did exactly.
A Well, once he opened the knife up, he just kind of put it in his hand like this (indicating); kind of palmed it, and then he went on out of the store, and Tom Linn was following me  I don't know how close  but he was following behind me, and I was saying, "He's got a knife", several more times. I don't know how many times I said it. And I got out of the store, and he kind of turns and shows me the knife. He don't pull it at me, but he just kind of turns and shows it to me.
* * * * * *
MR. ALLGOOD
Q Would you show the Jury how he showed you the knife the second time, Mr. McCollum?
A Well, he stood  he just kind of turns and shows me his hand; shows me the knife; let's me know he has one.
* * * * * *
Q At that time, how was the knife, as far as to whether the knife was open or closed?
A The blade was open.
* * * * * *
Q How far away from him were you?

*615 A I don't know; about five or ten feet. I never did get no closer than five feet from him, and that was inside the store.
* * * * * *
Q Why didn't you grab him and hold him for the police?
A I seen the knife. In all my time at Kroger's, that's the first time someone has pulled a weapon on me. I didn't attempt to stop him.
* * * * * *
Q Why did you decide that you wanted to go back to the store, Mr. McCollum?
A I told Tom, I said, "Let's go back to the store and wait for the police because he has the knife." And then we turned around; went back to the store. By that time, the police officer had arrived, so we motioned for him to follow us, and then we made a couple of blocks in the vicinity where he was last seen at, and then I finally got out of Tom's pickup truck and gets in the police car with the officer.
* * * * * *
A Well I said several times that he had a knife, he had a knife, and 
Q You were talking to Tom?
A Well, I was just wanting everybody to know that he had a knife. I wanted somebody to see it. I said several times he had a knife, and then when I got out of the store, he turned and showed it to me again, and then I never said nothing else to him again until he started running, and I said, "You better drop it. The police is on the way. Drop it. The police is on the way."
Q Did you  did he stop when he turned around or did he continue on out of the store?
A He slowed down to show me the knife. He didn't come to a complete stop.
Q In other words, Charles, what you're saying is, as he walked out of the store, he turned around and looked at you?
A Yes, he turned enough for me to see his knife in his hand.

Under the Facts and Law, was an armed robbery committed?
The indictment in this case was drawn under Mississippi Code Annotated § 97-3-79 (1972), which follows:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.
In Hermann v. State, 239 Miss. 523, 123 So.2d 846 (1960), a gas station attendant filled up Hermann's gasoline tank with 16.8 gallons of gasoline. Then he hung up the gasoline hose, walked over to Hermann and informed him that the cost of the 16.8 gallons of gasoline was $6.38.[1] According to the attendant, Hermann opened the car door, obtained a rifle from the car, and pointed it at the attendant's stomach. Hermann instructed him not to try anything and told the attendant "if you try to follow me, I will hurt you." Hermann drove the vehicle away leaving the attendant standing with his arms raised in the air. Hermann contended that the violence or intimidation (putting in fear) occurred after the taking of the gasoline. This Court said:
It is stated in Wharton's Criminal Law and Procedure, Anderson, Volume 2, page 243 that "In the absence of statutory modification, the constituent elements of the offense of robbery are (1) a felonious taking, (2) accompanied by an asportation, of (3) personal property of *616 value (4) from the person of another or in his presence, (5) against his will, (6) by violence or by putting him in fear, (7) animo furandi." Again at page 252 of the same text it is stated: "The actual taking and asportation of some of the victim's personal property is an essential element of robbery." (Italics ours). Again at page 253 of the same text it is stated: "As in larceny, there must also be an asportation of carrying away of the goods." In the instant case the appellant, Richard Hermann, did not take complete control and dominion over the property of W.O. Dewease until he pointed the rifle on the gasoline station attendant, James Roy Dewease, and placed him in fear by telling him, "Don't start anything," and "If you try to follow me, I will hurt you." This occurred after the obtaining of conditional possession of the gasoline (on the assumption that the occupants of the car would pay for the gasoline) but prior to any attempt to asport the same. They resorted to the means of drawing the rifle in a threatening manner to make good their intention of removing the gasoline from the presence of the gasoline service station attendant and of making good their escape.

Again at page 263, Wharton's Criminal Law and Procedure, Anderson, Volume 2, it is said: "The act of the defendant may either precede or be concurrent with the taking of the victim's property." We think that the taking away of the gasoline was contemporaneous with the point of the rifle at the gasoline station attendant, and that the commission of this act was essential to the completion of the crime of robbery.
After the enactment of Chapter 328, Laws of 1932, known as our "Robbery with Firearms Statute" this Court in the case of Fortenberry v. State, 190 Miss. 729, 1 So.2d 585, 586, said:
"Following upon the descent of the nation-wide financial depression, one of the effects of which was a marked increase in the crimes of larceny, robbery, and burglary, and with the advent of the automobile everywhere and the construction of improved highways, one of the criminal developments which had thrust itself, perhaps above all others, upon public attention in this State, as well as elsewhere, was the robbery of banks, mercantile establishments, filling stations and the like, by those who had taken to banditry as a business, or who for the time being had copied the crucial characteristics of that course, and suddenly appearing and thereafter hastily escaping, would use deadly weapons in enforcing their purpose and who were so intently predetermined upon the accomplishment of that purpose that they would kill in its execution and would kill also in making their escape."
From the foregoing views, it follows that we are of the opinion that this case is distinguishable from the case of Register v. State, supra, principally relied on by appellants, in that the drawing of the rifle on the gasoline station attendant in the case at bar was the means employed to enable them to asport the gasoline from the premises and to enable them to make good their escape.
123 So.2d at 849.
In the case sub judice, employees of the store saw the appellant take two packages of steak from the meat counter, one of which he was able to conceal in his trousers, and start walking hurriedly toward the front exit. The manager was immediately notified of the theft, and he and the meat cutter converged upon appellant, attempted to stop him from leaving the store, then followed him outside through a parking lot where appellant finally discarded the stolen meat and the pursuit was discontinued. The record overwhelmingly reflects that the store manager did not touch or restrain appellant from leaving the store and the area by physical force because he was afraid of the knife, which appellant exhibited to him, apparently for the purpose of instilling fear to stop the apprehension and pursuit. Even a pocketknife in the hands of a thief could produce serious *617 bodily harm, viz, throat and jugular, eyes and head.
In Harper v. State, 434 So.2d 1367, 1368 (Miss. 1983), the Court held that fear expressed in the statute simply amounts to an expectation that personal injury may result from the weapon possessed by the accused. The Court said:
There is no merit to the appellant's contention that the victim was not placed in fear but was only made mad. The fear contemplated by the statute does not require the victim to be frightened or terrified. It is quite sufficient if he expect or anticipates that personal injury may result, as did Mr. Murff, if he does not abide by the instructions of the assailant, who is threatening the use of a deadly weapon.
We are of the opinion that the crime, which began as petty larceny or shoplifting, escalated into armed robbery, that the issues were properly submitted to the jury, and that the conviction must stand.

II.

THE SENTENCE OF FORTY YEARS WHICH CANNOT BE REDUCED OR SUSPENDED AND FOR WHICH HE CANNOT BE ELIGIBLE FOR PROBATION OR PAROLE VIOLATES THE EIGHTH AMENDMENT PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT.
Resolution of this question presents a more difficult problem when considering our penalty statutes and Mississippi decisions interpreting them. The jury verdict found the appellant guilty as charged, but the jury was unable to fix his sentence.
In addition to the crime of robbery, the indictment charged appellant with being an habitual offender in that (1) he had been previously convicted of the crime of robbery, a felony, on November 25, 1974, in Cause No. 4940 in the Circuit Court of Lowndes County, Mississippi, and sentenced to serve a term of twelve (12) years in the Mississippi State Penitentiary; (2) and further, that he was convicted of the crime of escape, a felony, on May 27, 1975, in Cause No. 5322 in the Circuit Court of Lowndes County, Mississippi, and sentenced to serve a term of two (2) years in the Mississippi State Penitentiary. Subsequent to the jury verdict of guilty, the trial judge conducted a pre-sentence hearing which follows, except for copies of the conviction judgments:
PRESENTENCE HEARING
THE COURT:
A This is Case No. 7319, STATE OF MISSISSIPPI VERSUS EDDIE PRESLEY. Will the Defendant and his lawyer come to the bench, please?
(Defendant and Mr. Steighner approach bench)
This is the second part of the bifarcated [sic] hearings. The Defendant has been found guilty by the jury of armed robbery. We now have had a presentence investigation. Has the Defendant received a copy of the presentence investigation report?
A I have, sir.
Q Have you been over it with your lawyer?
A I have, sir.
Q Do you want to introduce any evidence to contradict or supplement the information contained in this report or are you satisfied that it is correct?
A I don't want to introduce anything else.
Q Do you want to offer any evidence in extenuation or mitigation?
A No, sir.
Q Does the State want to introduce any evidence in aggravation?
A MR. ALLGOOD:
Yes, your Honor. I have to I think. If your Honor, please, at this time, the State would tender into evidence a certified copy of the conviction of Eddie Presley in Cause No. 4940 in the Circuit Court of Lowndes County, Mississippi, on the crime of  for the crime of robbery on November the 25th, 1974.
MR. STEIGHNER:

*618 We have seen those and have no objection to either one of them being entered into evidence.
THE COURT:
Very well, let it be received into evidence and be marked as an exhibit. (COURT REPORTER MARKS CERTIFIED COPY OF CONVICTION IN CAUSE NO. 4940 AS STATE'S EXHIBIT NO. 5 INTO EVIDENCE)
MR. ALLGOOD:
Likewise, your Honor, the State would tender into evidence a certified copy of the conviction of the Defendant, Eddie Presley, in Cause No. 5322 in the Circuit Court of Lowndes County, Mississippi for the crime of escape, wherein he was sentenced to two years in the Mississippi Department of Corrections on May 27th, 1975.
THE COURT:
I believe you said you had no objection to that either, is that right, Counsel?
MR. STEIGHNER:
Correct, Your Honor.
THE COURT:
It will be admitted into evidence; be marked as an exhibit by the Court Reporter. Give the Court Reporter time to mark it.
(COURT REPORTER MARKS CERTIFIED COPY OF CONVICTION IN CAUSE NO. 5322 AS STATE'S EXHIBIT NO. 6 INTO EVIDENCE)
THE COURT:
Q Does the State have anything further?
A No, your Honor.
Q Does the Defendant have any evidence? Now this is the part of the hearing that has to do with habitual criminal.
A MR. STEIGHNER:
None, Your Honor.
Q All right. Let the Defendant and his Counsel come to the bench again.
(Defendant and his Counsel approach the bench)
The Court finds that the Defendant has been charged as an habitual criminal, and that the Defendant should be, and he is, found guilty as an habitual criminal, subject to sentencing under Section 99-19-81 of the Mississippi Code of 1972. (To Defendant) Do you have anything further you want to say to the Court before the sentence of the law is passed upon you?
A Yes, sir, I do. I want to say that in this Court I did feel that I got a fair trial; that there was no prejudice or impartialness within it, and I want to congratulate the D.A., the District Attorney, in this matter, and my lawyer for putting on such a good defense, and I feel everything went all right.
Q You had nothing further you want to say before the sentence of the law is passed upon you?
A No, sir.
SENTENCE
THE COURT:
YOU ARE SENTENCED AS AN HABITUAL CRIMINAL UNDER SECTION 99-19-81 OF THE MISSISSIPPI CODE OF 1972, TO BE IMPRISONED WITH THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR A PERIOD OF FORTY (40) YEARS, AND SUCH SENTENCE SHALL NOT BE REDUCED OR SUSPENDED, NOR SHALL YOU BE ELIGIBLE FOR PAROLE OR PROBATION.
Appellant relies upon Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), for the proposition that the sentence in the case sub judice is disproportionate to the crime, since there are a large number of serious crimes for which the sentence imposed here would not be as severe. In Helm, the Court stated that no question was raised as to the general validity of sentences without possibility of parole; and that the only issue before the court was whether, in the circumstances of the case and in light of the constitutional principle of proportionality, the sentence imposed violates the Eighth Amendment. Helm was sentenced to life imprisonment without parole after having been convicted as a recidivist. *619 The evidence showed that he had committed seven passive crimes previously.
In Whitmore v. Maggio, 742 F.2d 230 (5th Cir.1984), a state prisoner, who was convicted of two counts of armed robbery and sentenced to a term of 125 years in prison without benefit of parole, sought habeas corpus relief. The Fifth Circuit held failure of the district court to conduct a proportionality review of petitioner's claim that his consecutive sentences of seventy-five (75) years and fifty (50) years without possibility of parole constituted cruel and unusual treatment. The Fifth Circuit reversed and remanded the case for a proportionality review.[1a]
The record reflects that appellant's criminal record shows the following convictions:

 APPROXIMATE
 DATE OFFENSE AGE 
 October 8, 1973 Resisting Arrest 18
 November 25, 1974 Robbery 19
 May 27, 1975 Escape 20
 March 6, 1979 Malicious Mischief 24
 February 14, 1980 Simple Assault 25
 September 23, 1980 Public Disturbance 25
 November 17, 1981 Public Disturbance 26
 January 30, 1982 Armed Robbery 27

The State argues that Helm differs from the case sub judice in the following respects:
(1) The felonies in Solem were all non-violent, while appellant was convicted of robbery and armed robbery which necessarily involved violence.
(2) Appellant's record also contained a conviction for simple assault.
(3) Appellant was a professional criminal beginning at age 18 up to the time of the armed robbery in the case at bar, as shown above.
(4) Incarceration of appellant will promote the goals of the criminal justice system since appellant was unable to abide by the rules of probation and parole in the past.
(5) Helm was sentenced to life without parole; Presley was sentenced to 40 years without parole.
(6) Helm presented evidence of alcoholism as an excuse for his behavior, Presley presented no mitigating evidence during the sentencing portion of the trial.
However, the record does not indicate anything relating to the facts of the charges (1) resisting arrest, (2) robbery, (3) escape, as to whether there were mitigating circumstances. All other offenses were relatively minor and constituted misdemeanors. There was no previous conviction for shoplifting. The penalty for the first offense of shoplifting, when the value of the goods taken is less than one hundred dollars ($100.00), is a fine of not less than twenty-five dollars ($25.00) nor more than three hundred dollars ($300.00), and by imprisonment in the county jail for a term of not less than five (5) days nor more than six (6) months or by both such fine and imprisonment in the discretion of the court.
The recidivist statute applicable to this case is contained in Mississippi Code Annotated § 99-19-81 (Supp. 1984), which follows:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been *620 sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
We have held that, when sentences are within the limits of the statute, the imposition of such sentences is within the sound discretion of the trial court and this Court will not reverse them. Boyington v. State, 389 So.2d 485 (Miss. 1980). Likewise, we have held that providing punishment for crime is a function of the legislature, and, unless the punishment specified by statute constitutes cruel and unusual treatment, it will not be disturbed by the judiciary. Allen v. State, 440 So.2d 544 (Miss. 1983); Adams v. State, 410 So.2d 1332 (Miss. 1982); Baker v. State, 394 So.2d 1376 (Miss. 1981); Horton v. State, 374 So.2d 764 (Miss. 1979).
We have carefully examined the record in this case. A pre-sentence hearing was conducted pursuant to Rules 6.02-6.04, Uniform Criminal Rules of Circuit Court Practice, and it was conceded that appellant is an habitual offender as defined by the statute. However, we are of the opinion that an adequate pre-sentencing hearing was not held, although the trial judge is not to be faulted in the matter, since he afforded every opportunity to appellant and his counsel to present mitigating evidence at that hearing. We do not retreat from the holding of our decisions in the cases cited above, but we recognize that there are cases, even when the appellant and his attorney fail to prepare and complete a sentencing record, where the trial court must consider all facets, background and record in a sentencing hearing in order that a just and proper sentence may be imposed. This is such a case. We are of the opinion that this cause should be remanded in order that the lower court may consider and pass upon, all matters relevant to the sentence of appellant. It should require counsel for appellant to present any mitigating circumstances at the resentencing hearing (surely, there must be some).
The sentence of the lower court is vacated and the cause is remanded for an additional sentence hearing and resentencing.
JUDGMENT OF CONVICTION AFFIRMED. SENTENCE VACATED AND CASE REMANDED TO THE LOWER COURT FOR RESENTENCING HEARING.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
ROBERTSON and ANDERSON, JJ., specially concur.
ROBERTSON, Justice, specially concurring:
We have a longstanding and normally salutary rule in this state that imposition of a sentence of a term of years in a criminal proceeding is within the discretion of the trial judge and that such sentence will not be disturbed on appeal if it is within the limits authorized by a duly promulgated enactment of the legislature. See, e.g., Bracy v. State, 396 So.2d 632, 636 (Miss. 1981); Boyington v. State, 389 So.2d 485, 491 (Miss. 1980); Yazzie v. State, 366 So.2d 240, 244 (Miss. 1979); Boone v. State, 291 So.2d 182, 187 (Miss. 1974); Bond v. State, 249 Miss. 352, 358, 162 So.2d 510, 512 (1964); Harris v. State, 142 Miss. 342, 344-45, 107 So. 372, 373 (1926). Put another way, the limits thought imposed upon the sentencing judge's discretion are those found in the statute and those only.
This rule  which is a creature of this Court's making and has no base in legislative directive  has many virtues. Most prominent of these are the superior institutional and de facto opportunity of the trial judge to get well in mind all of the relevant facts and circumstances regarding the offense committed and the offender to be sentenced. Beyond that, the trial judge has the opportunity and the responsibility *621 to see and observe the offender, eyeball to eyeball, to engage him in colloquy. Where a trial has been had, the offender's demeanor becomes a matter within the actual knowledge of the sentencing judge.
By way of contrast, we are ill equipped to impose sentences in criminal cases because we have only a cold record to review, because we have not seen the defendant eyeball to eyeball, because we do not have access to a presentence report which if done properly goes far beyond the scope of evidence admissible at trial. On a more practical level, as all know we simply do not have the time and resources to get into the sentence imposition and review business.
The rule stated in the cases cited above and many others too numerous to cite has, I am confident, the full support of every member of this Court. There can be little doubt that on the whole it works better than any other approach to sentencing review. No one here wants to change the rule. Indeed the rule is such a wise and workable rule that I think it fair to say that the only thing that will ever cause us to deviate from it is the imposition by trial judges of sentences as shockingly excessive as that we have here, forty years without parole for what in essence is a petty criminal's stealing a steak.
ANDERSON, J., joins in this opinion.
NOTES
[1] In 1960, gasoline was 38¢ a gallon. If the package of ribeye steaks contained two steaks, at the prices today, the value would have exceeded $8.00 for the package.
[1a] A thorough discussion of Solem v. Helm and Whitmore v. Maggio is not necessary to our decision in this case. However, the Bench and Bar should acquaint themselves with the principle involved in those cases.