# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-KA-00458-SCT

*MELISSA DAVIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/25/97 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | M.A. BASS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  SCOTT STUART |
| DISTRICT ATTORNEY: | ALEXANDER MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | CONVICTION AFFIRMED; SENTENCE REVERSED AND REMANDED 12/10/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/31/98 |

**BEFORE PRATHER, C.J., BANKS AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

## INTRODUCTION

¶1. Melissa Davis was indicted for the sale of two rocks of crack cocaine within 1,500 feet of a church on March 7, 1997. Davis went to trial before a jury in Copiah County Circuit Court on March 25, 1997. On that day she was found guilty and sentenced to sixty years in prison. Davis's motion for a JNOV or in the alternative for a new trial was denied on April 4, 1997. Aggrieved, Davis filed a timely motion to appeal listing two issues:

> **I. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTIONS FOR DIRECTED VERDICT AT THE END OF THE STATE'S CASE AND AT THE END OF THE DEFENDANT'S CASE; AND, THE TRIAL COURT ERRED WHEN IT DID NOT GRANT THE APPELLANT'S MOTION FOR JNOV OR IN THE ALTERNATIVE A NEW TRIAL, BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING**

**WEIGHT OF THE EVIDENCE AND WAS THE RESULT OF BIAS, PREJUDICE AND PASSION.**

**II. THE SENTENCE OF SIXTY YEARS WITH THE MISSISSIPPI DEPARTMENT OF CORRECTIONS CONSTITUTES A SENTENCE OF LIFE IN PRISON AND IS CRUEL UNUSUAL PUNISHMENT.**

## FACTS OF THE CASE

¶2. On October 3, 1996, Ron Crew, Leigh Harvey and John Whitaker, officers with the Hazlehurst, Mississippi Police Department, met with a confidential informant, Sabrina Walker, to set up a controlled crack cocaine buy from Melissa Davis. Walker was outfitted with an audio transmitter and given an unmarked police car equipped with a video recorder. Walker was searched and given $40.00 in police cash with which to buy cocaine.

¶3. Walker left her meeting with the police and drove to Mac's North End Store, a Hazlehurst business, and looked for Davis. At Mac's North End Store, Walker asked an unidentified man in the parking lot for Davis. Davis came to her car and Walker asked if she (Davis) had anything. Davis told Walker to "pull the car up." Walker asked Davis for a forty. Davis went to some bushes and returned to the car with two plastic bags, each containing a single rock. Walker gave Davis $40.00 in police cash, left Mac's North End Store and drove away to meet with the police.

¶4. Walker gave the police the two bags and was again searched by Officer Harvey. The two rocks were sent to the Mississippi Crime Lab where they were tested and identified as cocaine. Officer Ron Crew testified that he measured the distance from Mac's North End Store to Damascus Church. The distance from the place of sale to the church building was 702 feet.

¶5. After deliberations, the jury returned its verdict, finding Melissa Davis guilty of selling cocaine within 1, 500 feet of a church. The trial judge sentenced her to the maximum of thirty years for the sale, which when doubled because of the proximity of the church building, resulted in a total sentence of sixty years in the custody of the Mississippi Department of Corrections.

## DISCUSSION OF LAW

**I. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTIONS FOR DIRECTED VERDICT AT THE END OF THE STATE'S CASE AND AT THE END OF THE DEFENDANT'S CASE; AND, THE TRIAL COURT ERRED WHEN IT DID NOT GRANT THE APPELLANT'S MOTION FOR JNOV OR IN THE ALTERNATIVE A NEW TRIAL, BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND WAS THE RESULT OF BIAS, PREJUDICE AND PASSION**

¶6. In the case *sub judice*, there is more than enough evidence to support the trial court's denial of Davis's motions for directed verdict and JNOV/new trial. The testimony of the three police officers, the Mississippi Crime Lab expert and the informant, Sabrina Walker, together with the audio and video tapes of the cocaine buy, provide enough evidence so that reasonable and fair-minded jurors could find Davis guilty. Based on the same evidence in the record, the trial judge did not abuse his discretion when he denied

Davis's motions for JNOV/new trial. *Morgan v. State*, 703 So. 2d 832, 840 (Miss. 1997) (citing *Esparaza v. State*, 595 So. 2d 418 (Miss. 1992)).

¶7. For these reasons, this assignment is without merit.

## II. THE SENTENCE OF SIXTY YEARS WITH THE MISSISSIPPI DEPARTMENT OF CORRECTIONS CONSTITUTES A SENTENCE OF LIFE IN PRISON AND IS CRUEL UNUSUAL PUNISHMENT.

¶8. Davis urges that, even if guilty as charged, she was subjected to a sentence which was so excessive given the nature and details of her crime, as to be cruel and inhuman and disproportionate when viewed against similar sentences given for like offenses. Her crime on October 3, 1996, the only one for which she was convicted and sentenced in this proceeding, was the sale of two rocks of crack cocaine, two-tenths of a gram (.0071 ounces), for forty dollars. For this she received the maximum sentence which she could receive under Miss. Code Ann. § 41-29-139(b)(1) (1993), which was enhanced, indeed doubled, under Miss. Code Ann. § 41-29-142(1) because the sale took place a little over 700 feet from a church building. By the application of the maximum sentence allowed under both statutes, neither of which carry a mandatory sentence, Davis's penalty for the offense is sixty years in prison. This mother of a small child will not be eligible for parole before the year 2043, when she will be seventy-six years old, and therefore has received in essence a life sentence without parole.

¶9. It is unfortunate that we have little before us to explain this sentence. Davis chose not to offer evidence in her defense. While she acknowledged to the Judge that this was not her first time before him, we are not told how many prior offenses are in her history or the nature or punishment given for her earlier transgression or transgressions. It is also significant to note that whatever prior offenses existed, she was not tried as a repeat offender.[1]

¶10. At the time of sentencing, the trial court gave no explanation, and neither he nor we have the benefit of a pre-sentencing investigation. While the trial judge has, within the limits of the sentencing statutes, broad discretion as to the sentence given a particular offender, *Hoops v. State*, 681 So. 2d 521, 537 (Miss. 1996)**,** and although the decision to call for a pre-sentencing investigation likewise lies within his discretion, URCCC 11.02; *Hart v. State*, 639 So. 2d 1313, 1320 (Miss. 1994), one cannot but be concerned about the severity of the sentence in this case in the absence of anything appearing in the record which reflects egregious circumstances.

¶11. We recognize it is properly within the purview of the Legislature to determine the range of sentences, enunciating our citizens' determination of the social impact of harmful behavior. We equally well recognize that our circuit judges, present throughout criminal trials and observing in detail the testimony and evidence, are uniquely suited to apply a range of sentences to specific offenses. Justice Robertson in his concurrence in *Presley v. State*, 474 So. 2d 612, 620-21 (Miss. 1985) (Robertson, J., concurring), articulated these principles to which we still adhere. The Legislative judgment of recent years to provide serious penalties for the sale of cocaine is easy to understand when we observe the effect that its wide-spread distribution has had on Mississippi as well as the nation. Occasionally however, cases come before us in which sentences may be so severe as to appear on the record inexplicable and justify remanding the matter to the trial court for further consideration.[2]

¶12. In *Presley,* the defendant was convicted of armed robbery as a habitual offender and was sentenced

to a term of forty years in prison without the possibility of parole. His crime was stealing some steaks and as he escaped displaying a knife. A pre-sentencing hearing was conducted but was found to be inadequate, even though we observed in *Presley*, as here, the deficiency was not the fault of the trial judge who gave the defendant an opportunity to be heard. There, reviewing the evidence and considering that there had been only an inadequate pre-sentencing hearing, we remanded the case for re-sentencing.

¶13. In *McGilvery v. State*, 497 So. 2d 67 (Miss. 1986), the defendant was given a severe sentence without explanation by the trial judge and he appealed, pointing out that his co-defendant, who pled guilty without trial, had received a much lighter punishment. Recognizing that the circuit judge may have had an excellent reason for McGilvery's sentence which had not been articulated, we remanded for further consideration of the sentence, emphasizing the absolute right of one accused of a crime to a jury trial and reminding the bench and bar that the sentence must not include a penalty for exercising that right.

¶14. Even as to those circumstances for which the statutes provide mandatory sentences, the punishment must be weighed against the prohibition imposed in the Eighth Amendment to the United States Constitution against cruel and unusual punishment. In *Clowers v. State*, 522 So. 2d 762 (Miss. 1988), the defendant was convicted of uttering a forged $250 check, and although finding that he was an habitual offender, the trial court sentenced Clowers to a term of five years, in spite of the controlling statute which mandated a sentence of fifteen years without possibility of parole. In doing so, the trial judge found that the mandated sentence would be cruel and unusual under the facts. The State objected and cross-appealed, and we upheld the trial judge's sentence, relying in part on *Solem v. Helm*, 463 U.S. 277 (1983), and its declaration that a criminal sentence must not be disproportionate to the crime for which the defendant is being sentenced.

¶15. In summary, under the facts of this case and given the lack of justification for the sentence on the face of the record on appeal, it is appropriate that the case be remanded for further consideration of the sentence imposed, consistent with those principles declared in *Presley, McGilvery* and *Clowers* and in the spirit of *Solem*. Davis has in her brief listed possibly comparable cases in which far lesser sentences were imposed both in Copiah and in adjoining Pike Counties. Upon remand, these cases will no doubt be considered by the trial court . Trial counsel in other cases should not read the decision of the Court in this case to provide security when no defense is offered and no effort is made to present matters justifying what they and their clients deem to be appropriate sentences, nor should this decision be read as imposing new restrictions on what remains very broad discretion in sentencing matters.

## CONCLUSION

¶16. The trial court did not err in denying Davis's motions for directed verdict and JNOV/new trial. There is ample evidence in the record to support the judge's denials and therefore, Davis's conviction for sale of cocaine is affirmed.

¶17. Although the sixty year sentence is within the statutory limits set by the Legislature, it is in fact the maximum sentence allowable for a sale of cocaine. Based on the facts of this case and the lack of justification for such a sentence on the face of the record, we remand this case for further consideration of the sentence imposed consistent with the principles discussed in this opinion. Despite the dissenters' best attempts to characterize today's result as an absolution of Davis for her crime, we have not directed the trial judge to set her free. We simply remand the case for resentencing because we do not have enough information before us to determine if the trial judge abused his discretion in sentencing Davis to sixty years in

the custody of the Mississippi Department of Corrections.

¶18. **CONVICTION OF UNLAWFUL SALE OF COCAINE WITHIN 1500' OF A CHURCH AFFIRMED; SENTENCE TO SERVE A TERM OF 60 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS REVERSED AND REMANDED FOR RESENTENCING.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., AND BANKS, J., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND MILLS, JJ. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, J. ROBERTS, J., JOINS THIS OPINION IN PART.**

**SMITH, JUSTICE, DISSENTING:**

¶19. The majority is of the view that the sentence of the trial judge is so extremely severe that a remand for re-sentencing is necessary. The majority writes, "Although the sixty year sentence is within the statutory limits set by the Legislature, it is in fact the maximum sentence allowable for a sale of cocaine. Based on the facts of this case and the lack of justification for such a sentence on the face of the record, we remand this case for further consideration of the sentence imposed consistent with the principles discussed in this opinion."*Majority*, at 8. I disagree and accordingly dissent.

¶20. The sentence which the circuit judge imposed was within the limits prescribed by the statute. When the sentence imposed is within the limits set out by statute, the sentence is usually upheld and not regarded as cruel and unusual. **Barnwell v. State**, 567 So. 2d 215, 222 (Miss. 1990). This Court has rarely allowed challenges to the proportionality of a sentence if the case was not capital. We have stated, "'outside the context of capital punishment, successful challenges to the proportionality of a particular sentence [will be] exceedingly rare. . .*Clowers v. State*, 522 So. 2d 762, 765 (Miss. 1988), (*quoting **Solem v. Helm,*** 463 U.S. 277, 289-90 (1983)).

¶21. The case at bar is neither a death penalty nor a sentence of life without parole, (although the majority claims that the effect is the same), therefore extended proportionality analysis is not required. Nor was the trial judge required to conduct a pre-sentence hearing. Pre-sentence reports and investigations are discretionary with the trial court, not mandatory. URCCP 11.02; **Hart v. State**, 639 So. 2d 1313, 1320 (Miss. 1994). Judge Pickard did not err by not requesting a pre-sentence investigation. Apparently, the learned judge was very familiar with Davis and did not need a pre-sentence report prior to sentencing. Although she was not indicted as a prior offender, and Davis elected not to offer any evidence in her defense, nevertheless, the record reveals that Davis acknowledged to the trial judge that this was not her first time before that very trial judge and that she had other prior offenses. We simply do not know how numerous were her prior offenses, nor the nature of the sentences imposed for such offenses.

¶22. Regardless, we do know that Davis was convicted for selling cocaine within 1500 feet of a church, in violation of Miss. Code Ann. § 41-29-139(b)(1) (1993), and she was sentenced within the statute which

was enhanced as allowable under Miss. Code Ann. § 41-29-142(1). Even the majority recognizes the right of the Mississippi Legislature in allowing for the imposition of serious penalties for the sale of cocaine, especially when the sales occur in close proximity to schools and churches. The trial judge was very familiar with Davis prior to this trial and he had observed her "throughout her criminal trial." Therefore, we should adhere to our prior principle that trial judges, having observed in detail the testimony and evidence, are uniquely suited to apply a range of sentences to specific offenses. *Presley v. State*, 474 So. 2d 612, 620-21 (Miss. 1985)(Robertson, J. specially concurring). While it is most unfortunate that Davis has a very small child, nonetheless, that fact should not control or influence this Court's decision. Nor should this Court equate the facts of this case and resulting sentence with the disproportionate sentence in *Presley* where the defendant merely stole a few steaks, or the forgery of a $250.00 check in *Clowers v. State,* 522 So. 2d 762 (Miss. 1988), where this Court upheld the trial court's "vested sentencing discretion" in the imposition of five years rather than fifteen years because the trial judge believed the larger sentence was cruel and unusual under the facts. *Clowers,* 522 So. 2d at 764.

¶23. There is one case decided by this Court which is more controlling and on point. The case at bar is more akin to *Stromas v. State*, 618 So. 2d 116 (Miss. 1993)(Prather, P.J.), where in considering the enhanced sentence of 60 years for the sale of a small amount of cocaine, this Court held that the sentence given to Stromas was statutorily authorized, and even though quite severe, was not grossly disproportionate to the crime committed. A unanimous *Stromas* Court stated:

> Although this sentence seems quite severe, it is not a "grossly disproportionate" sentence for the crimes that Stromas committed. Drug offenses are very serious, and the public has expressed grave concern with the drug problem. The legislature has responded in kind with stiff penalties for drug offenders. It is the legislature's prerogative, and not this Court's, to set the length of sentences.
>
> **Because this sentence was within the statutory guidelines, and because this State's legislature, as a matter of public policy, has called for stiff penalties for drug offender,** *Solem v. Helm* **is not implicated in this case**. . . .
>
> Apart from the factual context of *Solem*- a sentence of life in prison without the possibility of parole- or a sentence which is manifestly disproportionate to the crime committed. . .extended proportionality analysis is not required by the Eighth Amendment.

*Stromas*, 618 So. 2d at 123.(citation omitted).

¶24. *Solem* simply does not apply in the factual situation in the case at bar which, in my view, is virtually identical to *Stromas*. Even if *Solem* did apply and this Court conducted a comparison of sentences imposed within this same circuit court district for the same crime, we cannot help but notice that Davis' brief contains a list of drug sentences for other defendants which reveals that on three other occasions the circuit court imposed 60 year sentences upon other defendants for sale of drugs. Based upon the enhancement statute and maximum sentences allowed by the statute, it appears that 60 years is often imposed by the circuit judge in this district when the circumstances warrant it and the statute allows enhancement of penalties, which was exactly what occurred in *Stromas*. The two cases cannot be distinguished.

¶25. Drug cases are in a class by themselves. The Legislature has determined that the sale of drugs near schools and churches warrants severe punishment. The circuit judge imposed a sentence within statutory limits. This Court should affirm Davis' 60 year sentence.

¶26. I respectfully dissent.

**ROBERTS AND MILLS, JJ., JOIN THIS OPINION.**

**MILLS, JUSTICE, DISSENTING:**

¶27. I respectfully dissent. Though I am sympathetic to Ms. Davis' plight, the law is not in her favor. In this case, Ms. Davis received a sentence of sixty years for the sale of two-tenths of one gram of cocaine. The sentence was enhanced because the sale took place near a church building. The sentence given to Ms. Davis by the Circuit Judge was well within the statute, and as such the Circuit Judge was well within the parameters of his authority in sentencing Ms. Davis to sixty years.

¶28. The pertinent issue which must be addressed is whether the trial court must consider the proportionality of the sentence imposed in relation to the crime committed when determining the duration of the sentence, and if the trial court does not make such a determination, whether this Court may apply such a proportionality review on appeal. The proportionality test is derived from the Eighth Amendment to the United States Constitution which prohibits the imposition of cruel and unusual punishment, and from Article 3, Section 28 of the Mississippi Constitution which also prohibits the infliction of cruel or unusual punishment. In *Barnwell v. State*, 567 So. 2d 215 (Miss. 1990) we addressed the application of the proportionality test to sentences imposed by trial courts. In doing so, we relied on the rationale of the United States Supreme Court in *Solem v. Helm*:

> [W]e do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.

*Barnwell,* 567 So. 2d at 220 (*quoting **Solem v. Helm***, 463 U.S. 277, (1983)).

¶29. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the United States Supreme Court traced the prohibition against cruel and unusual punishment to the English Declaration of Rights. The Court found that the "cruell and unusuall Punishments" provision of the Declaration was prompted by the abuses attributed to Lord Chief Justice Jeffries of the King's Bench during the Stuart reign of James II. *Harmelin*, 501 U.S. at 967. Jeffries presided over the "Bloody Assizes" during which a special commission led by Jeffries tried, convicted, and executed hundreds of suspected insurgents. *Id.* at 968. The Court recognized that punishments imposed by Jeffries  drawing and quartering, burning of women felons, beheading, disemboweling, etc.  were specifically authorized by law and remained so for many years afterwards[(3)]. *Id.* The "cruell and unusuall punishment" provision of the Declaration of rights was enacted in response to these drastic measures. As to the meaning of the provision and its application to the English court system, the Supreme Court wrote:

> [A] punishment is not considered objectionable because it is disproportionate, . . . but because it is 'out of [the Judge's] Power,' 'contrary to Law and ancient practice,' without 'Precedents' or 'express Law to warrant,' 'unusual,' 'illegal,' or imposed by 'Pretense to a discretionary Power.' (citation

omitted). Moreover, the phrase 'cruell and unusuall' is treated as interchangeable with 'cruel and illegal.' . . . In the legal world of the time, and in the context of restricting punishments determined by the Crown (or the Crown's judges), 'illegall' and 'unusuall' were identical for practical purposes. Not all punishments were specified by statute; many were determined by the common law. Departures from the common law were lawful only if authorized by statute[(4)].

*Id.* at 973-74. Therefore, the purpose behind the English provision was to assure that the judges did not exceed the limits set by the Crown. If the judges imposed a penalty which was beyond the perimeters of statute or common law, the penalty imposed would be considered "cruel" or "illegal" and as such would defy the Declaration.

¶30. The Court then considered how the English "cruell and unusuall" provision applied to the Eighth Amendment to the United States Constitution. In doing so, the Court reasoned that "a direct transplant of the English meaning to the soil of American constitutionalism would in any case have been impossible. There were no common-law punishments in the federal system, . . . so that the provision must have been meant as a check *not upon judges but upon the Legislature*. See, e.g., *In re Kemmler*, 136 U.S. 436, 446-447 (1890)." *Id.* at 975-76 (emphasis added). Further, "by forbidding 'cruel and unusual punishments,' (citations omitted) the Clause disables the Legislature from authorizing particular forms or "modes" of punishment that are not regularly or customarily employed."[(5)] *Id.* The Court noted that the actions of the First Congress of the United States "belie any doctrine of proportionality," and "early commentary on the Clause contains no reference to disproportionate or excessive sentences." *Id.* at 980-81. Reference is only made to the restriction on the mode of punishment imposed by the Legislature, which is the apparent intent behind the adoption of the Eighth Amendment. *Id.* at 981. It is a check on the ability of the Legislature to authorize cruel methods of punishment that are not customarily employed rather than a guarantee against disproportionate sentences. *Id.* at 976.

¶31. As a result of its thorough review, the Supreme Court concluded that the Eighth Amendment contains no proportionality guarantee. *Id.* at 965. Although it is settled that the prohibition against "cruel and unusual" punishment applies to the mode of punishment set forth by the Legislature, no clear test for determining what actions by the Legislature would contradict the Eighth Amendment is discernable. The Supreme Court generally addressed the issue by stating: "That a State is entitled to treat with stern disapproval an act that other States punish with the mildest of sanctions follows a fortiori from the undoubted fact that a State may criminalize an act that other States do not criminalize at all." *Id.* at 989. "Diversity not only in policy, but in the means of implementing policy, is the very raison d'etre of our federal system." *Id.* at 990. In other words, the Supreme Court proclaimed that with the exception of the imposition of the death penalty, a State Legislature may impose a penalty which it sees fit regardless of the penalties imposed by other State Legislatures. Thus, there is no requirement that the laws of one State shall be proportional to the laws of another.

¶32. An appellate court will only undertake a proportionality review if a death sentence is imposed, or if the constitutionality of a statute is challenged under the Eighth Amendment as being "cruel" or "unusual"; i.e., not regularly or customarily employed, in light of the crime committed. However, a court should not review the sentence imposed by the trial court if such sentence is within the limits set by the Legislature. As we reiterated in *Hoops v. State*, 681 So. 2d 521 (Miss. 1996) "sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." *Hoops*, 681 So. 2d at 537. In light of the complete discretion allowed the trial judge, an Eighth Amendment evaluation

by an appellate court should only take place if it is the mode of punishment, rather than the length of sentence, which is being challenged.

**SMITH, J., JOINS THIS OPINION. ROBERTS, J., JOINS IN PART.**

1. Justice Smith's dissent equates Davis's previous appearance before Judge Pickard with the criminal history of the defendant in *Stromas v. State*, 618 So. 2d 116 (Miss. 1993). However, in *Stromas*, the defendant was convicted for the sale of cocaine and had been previously convicted for possession of marijuana. At trial he was found to be a repeat offender and his sentence of thirty years was doubled to sixty under the provisions of section 41-29-147 of the Mississippi Code. *Stromas*, 618 So. 2d at 123. The *Stromas* Court had the benefit of information about Stromas' past criminal history. All that is before us today are the limited facts of this case and Davis's statement that this is not her first conviction. For Davis we do not know for what she was first convicted nor do we know how her conduct and history compare to that of Stromas because there is simply no information in the record. This issue can be addressed on remand.

2. Justice Mills is correct in that the Eighth Amendment does not guarantee a right to a proportionality review. As we recognized in *Hoops v. State*, however, *Solem v. Helm*, 463 U.S. 277 (1983), has not been completely overruled. *Hoops*, 681 So. 2d at 538. The proportionality analysis of *Solem* is to apply when "`...a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality'.'" *Id.* (quoting *Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir. 1996)). With a showing of gross disproportionality, *Solem* requires these factors to be considered

> . . . (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Solem*, 463 U.S. at 292.

In remanding this case for resentencing, we do not find a need to address the application of *Solem*. We simply remand the case for resentencing because there is not enough evidence in the record before us to support a finding the trial judge did not abuse his discretion in sentencing Davis to sixty years. This issue can be addressed on remand.

3. See Granucci, "Nor Cruel and Unusual Punishments Inflicted:" The Original Meaning, 57 Calif.L.Rev. 839, 855-856 (1969); 4 W. Blackstone, Commentaries 369-370.

4. See 1 J. Stephen, A History of the Criminal Law of England 489-490 (1883); 1 J. Chitty, Criminal Law 710 (5th Am. ed. 1847).

5. E.g., ***Louisiana ex rel. Francis v. Resweber***, 329 U.S. 459, 464, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947)(plurality opinion); ***In re Kemmler***, 136 U.S. at 446-447, 10 S.Ct. at 933. See also ***United States v. Collins***, 25 F.Cas. 545 (No. 14,836)(CC R.I. 1854)(Curtis, J.).